Floyd D. PETERSON

v.

David MATHEWS, Secretary, Department of Health, Education and Welfare.

Civ. No. K–75–159.

United States District Court,
D. Maryland.

May 3, 1976.

Norman L. Blumenfeld, Washington, D. C., John B. Kenkel, Hyattsville, Md., for plaintiff.

Jervis S. Finney, U. S. Atty., District of Maryland, and Virginia S. Draper, Asst. U. S. Atty., Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

Peterson, a sixty-eight year old Commissioner for the Washington Suburban Sanitary Commission (WSSC), seeks review in this Court, pursuant to 42 U.S.C. § 405(g), of a decision by the Secretary of Health, Education and Welfare (HEW) denying Peterson retirement benefits under the Federal Old-Age, Survivors and Disability Insur-

ance Act, 42 U.S.C. §§ 401 *et seq.* (the Act). Peterson has exhausted all available administrative remedies.

Plaintiff, who held a number of federal governmental positions prior to 1961, and who in May of 1970 retired from the position of consultant to the "Electric Power Industries", thereafter applied for disability benefits pursuant to 42 U.S.C. § 423. That application was approved on December 12, 1970 after a disability examiner had on November 17, 1970 concluded that Peterson suffered from "poliomyelitis with motor deficits, bilateral, of the lower extremities" (Ad.Rec. at 50A). Subsequently, on September 10, 1971, Peterson was appointed a Commissioner of the WSSC and informed the Social Security Administration (SSA)[1] of that fact on October 19, 1971 in a document in which he stated:

> Effective 9/10/71 I was appointed by the Montgomery Co. Executive to the Washington Suburban Sanitary Commission.
>
> Once a week, for four hours the Commission meets to decide policy. I will be paid $6200 per year.
>
> I will have no other duties, besides the above mentioned.

(Ad.Rec. at 50D–51). In response, the Director of the Bureau of Disability Insurance of SSA (BDI) wrote Peterson as follows on November 8, 1971:

> Thank you for telling us that you returned to work. We have reviewed your case and have determined that you will continue to receive your disability payments.

(Ad.Rec. at 52).[2] On February 29, 1972, the BDI determined that in accordance with the provisions of 42 U.S.C. § 423(a), Peterson,

---

1. SSA is a part of HEW.

2. In a letter to Peterson dated October 17, 1974, Irwin A. Friedenberg, Member of the Appeals Council of the SSA, explained the basis for that November 8, 1971 letter as follows:

    Since you were entitled to disability benefits under section 223 of the Act prior to February 1972, no deductions were imposable against your benefits under section 203(f) of the Act because of your work activity. Rath-

er, when you reported that you returned to work on September 10, 1971, a determination was made that you were not engaged in substantial gainful activity as provided in section 223(d) of the Act and your benefits were continued. If it had been found that you were able to engage in substantial gainful activity, your benefits could have been terminated regardless of the amount of your earnings. [Ad.Rec. at 5].

who had attained age sixty-five on February 21, 1972, should thereafter, having reached that age, receive retirement benefits pursuant to 42 U.S.C. §§ 402–03 rather than further disability benefits under section 423. Subsequently, on May 22, 1972, Peterson's retirement benefits were terminated by the BDI on the basis of Peterson's "work and earnings" with the WSSC.

Plaintiff contends that, as a matter of law, his salary as a Commissioner of the WSSC does not constitute either "self-employment income" or "wages" within the meaning of 42 U.S.C. § 403(b). Peterson, in one or more documents, has described his

position of WSSC Commissioner as "self-employment", and maintains that the services he renders as Commissioner are not "substantial" within the meaning of the Act.[3] Peterson further reasons that he does not receive "wages" within the meaning of the Act since section 409 defines "wages" as "remuneration paid * * * for employment,"[4] and section 410 defines "employment" as services performed *"by an employee* for the person employing him" (emphasis added).[5] Peterson argues that he is not an "employee" of the WSSC as the term "employee" has been defined by the Act and regulations promulgated pursuant thereto.[6] Peterson additionally argues that

---

**3.** Section 403(f)(1) provides:
    * * * Notwithstanding the preceding provisions of this paragraph but subject to section 402(s) of this title, no part of the excess earnings of an individual shall be charged to any month (A) for which such individual was not entitled to a benefit under this subchapter, (B) in which such individual was age seventy-two or over, (C) in which such individual, if a child entitled to child's insurance benefits, has attained the age of 18, (D) for which such individual is entitled to widow's insurance benefits and has not attained age 65 (but only if she became so entitled prior to attaining age 60), or widower's insurance benefits and has not attained age 65 (but only if be [sic] became so entitled prior to attaining age 60), or (E) in which such individual did not engage in self-employment and did not render services for wages (determined as provided in paragraph (5) of this subsection) of more than $200 or the exempt amount as determined under paragraph (8).
    Section 403(f)(4) further provides:
    (4) For purposes of clause (E) of paragraph (1)—
        (A) An individual will be presumed, with respect to any month, to have been engaged in self-employment in such month until it is shown to the satisfaction of the Secretary that such individual rendered no substantial services in such month with respect to any trade or business the net income or loss of which is includible in computing (as provided in paragraph (5) of this subsection) his net earnings or net loss from self-employment for any taxable year. The Secretary shall by regulations prescribe the methods and criteria for determining whether or not an individual has rendered substantial services with respect to any trade or business.
    Thus, the earnings of an employee from self-employment are not to be offset against an employee's retirement benefits in any month in which "it is shown to the satisfaction of the

Secretary" that that employee "rendered no substantial services in such month with respect to any trade or business". *See* 20 C.F.R. §§ 404.446–47, discussed in *Weisenfeld v. Richardson,* 463 F.2d 670, 672–74 (3d Cir. 1972). In the light of the record in this case, Peterson would not appear to be self-employed. Hence, it is not necessary to determine whether or not Peterson has performed or will perform "substantial services" in any given month.

**4.** Section 409 provides:
    § 409 *Definition of wages*
    For the purposes of this subchapter, the term "wages" means remuneration paid prior to 1951 which was wages for the purposes of this subchapter under the law applicable to the payment of such remuneration, and remuneration paid after 1950 for employment, including the cash value of all remuneration paid in any medium other than cash * * .

**5.** Section 410 is reproduced *infra* at p. 1311.

**6.** *That argument is founded on the following* contentions advanced in plaintiff's complaint:
    26. The WSSC did not direct or control the details or means by which the plaintiff conducted his duties and activities as a Commissioner.
    27. The plaintiff controlled and determined for himself the degree to which he participated in the activities of the WSSC. The plaintiff was not responsible to the WSSC in the conduct of his duties as a Commissioner.
    28. The WSSC had no right to discharge the plaintiff from his position as Commissioner.
    29. The plaintiff was not entitled to any benefits enjoyed by employees of the WSSC, such as tenure, retirement programs, life insurance, sick leave, or vacation leave.
    30. The plaintiff attends one three-to-four-hour meeting each week to discuss policy

his services have not been brought within the statutory definition of "employment" by certain provisions of 42 U.S.C. § 418(a) relating to agreements entered into between HEW and the State of Maryland.[7]

The Government does not contend that Peterson can be termed an "employee" of the WSSC under the common law definition of the term "employee"[8] or that Peterson's income from his WSSC position constitutes "self-employment income"[9] within the meaning of 42 U.S.C. § 403(b). Rather, in determining that Peterson is not entitled to receive retirement benefits, Administrative Law Judge Thomas E. Bennett assigned the following reasons (Ad.Rec. at 15–16):

> The issues in this case are whether the claimant's services as Commissioner of the Washington Suburban Sanitary Commission are performed in an employment relationship and whether such activity is subject to the annual retirement test.
>
> The essential facts are that at times here material the claimant was a member of the Washington Suburban Sanitary Commission and derived significant income by reason of his performing services in that capacity, the performance of which services does not take a great deal of the claimant's time.
>
> The claimant's case is based on his contention that he is not an "employee" either of the Washington Suburban Sanitary Commission or of Montgomery County. This contention is significantly supported by letter opinion of the General Counsel of said Commission (Exhibit

18, dated October 6, 1972) and of the Assistant County Attorney, Montgomery County (Exhibit 31, dated April 23, 1974). Insofar as these letter opinions interpret the laws of Maryland, they are accepted here without qualification. The difficulty from the claimant's point of view is that the underlying statutory interpretation and application involves Sections 210(a)(7) and 218(h)(3) of the Social Security Act and related provisions as supplemented by regulations.

> The Administrative Law Judge has carefully reviewed said Sections 210(a)(7) and 218(h)(3) in light of the entire record in this case. Based thereon, it is found that the law and its application to the facts of this case are correctly stated on pages 2 and 3 of the Reconsideration Determination (Exhibit 28) in this case.
>
> It is the decision of the Administrative Law Judge that the services of the claimant as a Commissioner of the Washington Suburban Sanitary Commission are performed in an employment relationship within the meaning of the Social Security Act, as amended, and, therefore, the work activity involved is subject to the annual retirement test. The said Reconsideration Determination is hereby adopted affirmed as written.

In the Reconsideration Determination referred to by Judge Bennett, Bernard Levine, Chief of the Reconsideration Branch of the SSA, had written (Ad.Rec. at 81–82):

> The issues to be decided are whether Mr. Peterson's services as Commissioner of

---

decisions with other Commissioners of the WSSC.
*See also* Ad.Rec. at 28–30, 67–68; 20 C.F.R. §§ 404.1004–05.

7. The text of section 418 is reproduced *infra* at p. 1311.

8. *See* Ad.Rec. at 69.

9. Indeed, the Government takes (*see* Ad.Rec. at 81) the position that Peterson's salaried position (*see* (Ad.Rec. at 6) is expressly excluded from the definition of "self-employment income" by 42 U.S.C. § 411(c)(1), which provides:

> (c) The term "trade or business", when used with reference to self-employment in-

come or net earnings from self-employment, shall have the same meaning as when used in section 23 of Title 26, Internal Revenue Code of 1939, except that such term shall not include—

> (1) The performance of the functions of a public office, other than the functions of a public office of a State or a political subdivision thereof with respect to fees received in any period in which the functions are performed in a position compensated solely on a fee basis and in which such functions are not covered under an agreement entered into by such State and the Secretary pursuant to section 418 of this title. * * *.

the Washington Suburban Sanitary Commission are performed in an employment relationship and whether such activity is subject to the annual retirement test.

Section 210(a)(7) of the Social Security Act excepts from social security coverage services performed in the employ of a State or any political subdivision thereof, unless such services have been included in an agreement with the State under the provisions of Section 218 of the Social Security Act. Section 211(c)(1) of the Act excepts the performance of the functions of a public office from the term "trade or business" when used with reference to self-employment or net earnings from self-employment.

The State of Maryland has entered into an agreement in accordance with the provisions of Section 218 of the Social Security Act and has extended coverage to employees of many political subdivisions, including the services of employees of the Washington Suburban Sanitary Commission. Services of employees of the Commission in positions not under a retirement system as well as the services of those employees in positions under the Employees Retirement System of the State of Maryland were included.

Section 218(b)(3) of the Act clearly states that the term "employee" includes an officer of a State or political subdivision. The determination as to who is a public officer of a State or political subdivision is based on State law. The file contains information received by the Administration from Mr. John B. Kenkel, General Counsel for the Commission which indicate that Mr. Peterson is a public officer since he advises that the Commission members serve in a statutory office to which they are appointed by the county governing body. As an officer of a political subdivision Mr. Peterson is an employee within the meaning of Section 218(b)(3) and the payments made to him are wages reportable by the State under its coverage agreement.

Since Mr. Peterson's disability insurance benefits ended on January 31, 1972, the disability provisions of the law no longer applied. He became subject to Section 203(b)(F) of the Act in determining his entitlement to benefit payments beginning with February 1972 when he attained age 65. The law in effect before 1973 provided that an employee may earn up to $1680 a year without losing benefits. If he earns more than $1680 a year $1 is deducted for each $2 of earnings between $1680 and $2880 and $1 for each $1 of earnings over $2880. No deduction is made for any month in which the individual is age 72 or over or for any month in which he did not earn more than $140. Beginning 1973 the law was amended so that an individual may earn up to $2100 in 1973 without a loss of benefits. If he earns more than $2100, $1 is deducted for each $2 of earnings over $2100. No deduction is made for any month in which the individual is age 72 or over for any month in which he did not earn more than $175.

On the basis of the evidence of record the initial determination is affirmed on reconsideration. The Social Security Administration has no discretion in the matter and must administer the law as it was enacted.

Additionally, in a letter to Peterson dated October 17, 1974, Irwin A. Friedenberg, Member, Appeals Council, explained the basis for Judge Bennett's said determination as follows (Ad.Rec. at 5–6):

In your letter you also expressed some confusion as to why your work for the Washington Suburban Sanitary Commission was considered that of an employee rather than a self-employed person.

Effective January 1, 1957, under Modification Number 58, the State of Maryland entered into an agreement with the Secretary of Health, Education and Welfare extending social security coverage to employees of the Washington Suburban Sanitary Commission under section 218(a) of the Act. This agreement extended coverage to the services of employees of the Commission in positions not under a retirement system as well as the services of those employees in positions under the

Employees Retirement System of the State of Maryland.

When entering into an agreement with the Secretary, the State of Maryland did not request that such agreement exclude commissioners for the sanitary commission. In fact, as with other employees, social security taxes were withheld from your pay. Accordingly, as the term "employment" includes any service included under an agreement entered into under section 238(a) of the Act, your services for the commission would be considered those of an employee.

Under section 218(b) of the Act, the term "employee" includes an officer of a state or political subdivision. Some of the characteristics of a public officer are that he participates in the sovereign powers of the State, his duties are continuing, and he is paid on a salary rather than a fee basis.

A letter dated October 6, 1972, from Mr. John Kenkel indicates that you served in an office established by law, that you were appointed by a county governing body, and that you may have been discharged for good cause. Further, although he states the law does not specify your duties, you did participate in the sovereign powers of the State by discharging some of the functions of government. Finally, you were paid on a salary rather than a fee basis.

Therefore, the evidence of record indicates that you were a public officer of the State of Maryland or one of its political subdivisions and would also be considered an employee within the meaning of section 218(b)(3) of the Act.

The determination of whether Peterson is or is not an "employee" of the WSSC requires careful parsing of sections 410 and 418 of Title 42. Section 410(a) provides as follows:

§ 410. *Definitions relating to employment*

For the purposes of this subchapter—

*Employment*

(a) The term "employment" means any service performed  \*  \*  \*  after 1950 either (A) by an employee for the person employing him  \*  \*  \*; except that, in the case of service performed after 1950, such term shall not include—

\*   \*   \*   \*   \*   \*

(7) Service performed in the employ of a State, or any political subdivision thereof, or any instrumentality of any one or more of the foregoing which is wholly owned thereby, except that this paragraph shall not apply in the case of—

(A) service included under an agreement under section 418 of this title  \*  \*.

Section 418 provides, in turn:

§ 418. *Voluntary agreements for coverage of State and local employees— Purpose of agreement*

(a)(1) The Secretary shall, at the request of any State, enter into an agreement with such State for the purpose of extending the insurance system established by this subchapter to services performed by individuals as employees of such State or any political subdivision thereof. Each such agreement shall contain such provisions, not inconsistent with the provisions of this section, as the State may request.

(2) Notwithstanding section 410(a) of this title, for the purposes of this subchapter the term "employment" includes any service included under an agreement entered into under this section.[10]

*Definitions*

(b) For the purposes of this section—

(1)  \*  \*  \*

(2) The term "political subdivision" includes an instrumentality of (A) a State, (B) one or more political subdivisions of a State, or (c) a State and one or more of its political subdivisions.

(3) The term "employee" includes an officer of a State or political subdivision.

---

10. Thus, whether or not a given person falls within the definition of an employee under common law or under any other usage of that word, he can be an employee for Social Security purposes if a section 418 agreement so makes him.

(4) * * *

Section 410(a) expressly states that the term "employment" excludes "[s]ervice performed in the employ of a State, or any political subdivision thereof, or any instrumentality of any one or more of the foregoing which is wholly owned thereby." However, the effect of sections 410(a)(7)(A), 418(a)(1)–(2), and 418(b)(2)–(3) is to bring within the ambit of the statutory definition of "employment" services rendered under an agreement entered into between a State and the Secretary of HEW for the purpose of extending the Social Security insurance system to services performed by individuals as employees of that State or any political subdivision thereof.

Peterson contends that the section 418 agreement entered into between the Secretary of HEW and the State of Maryland, properly construed, does not extend coverage to Commissioners of the WSSC. The record discloses that on December 3, 1951, the State of Maryland and the "Federal Security Administrator" entered into an agreement extending the coverage of the Old-Age and Survivors' Insurance System to "services performed by individuals employed by [certain named] political subdivisions of the State of Maryland."[11] That agreement provides, in pertinent part:

    (A) Definitions.

    For purposes of this agreement—

    (1) The term "political subdivision" includes an instrumentality of (a) the State, (b) one or more political subdivisions of the State, or (c) the State and one or more of its political subdivisions, but does not include a joint instrumentality of this and any other State or States.

On January 18, 1957, the State of Maryland and the Secretary of HEW entered into an agreement adding to the coverage of the December 3, 1951 agreement the services of "employees" of the Washington Suburban Sanitary Commission and the County Commissioners of Anne Arundel County. Further, as indicated by Mr. Friedenberg (Ad.Rec. at 5), no exclusion was seemingly sought for WSSC Commissioners. In addition, social security taxes have been withheld from the pay of all such Commissioners since that agreement was initially consummated. (Id.).

Peterson contends that the WSSC does not constitute a "political subdivision" of the State of Maryland within the meaning of 42 U.S.C. § 418, and thus argues that it was beyond the power of the parties to the 1957 agreement to include the services of those Commissioners within its scope. At the administrative hearing held on February 19, 1974, Peterson, after having been informed of his right to representation and after electing to proceed pro se[12] (Ad.Rec. at 26), stated as follows (Ad.Rec. at 28–31; literally transcribed):

    The Washington Suburban Sanitary Commission is an independent autonomous agency. It has unlimited authority without review by anyone for carrying out the provisions of the Washington Suburban Sanitary District Code. The Sanitary District spreads over parts of several counties. The commission has broad authority to float bonds, employ personnel and conduct its business without outside surveillance oversight or approval. Its rates are not subject to review and approval by the State Public Service Commission. By statute it is not a "Municipal Corporation". It is a utility, a service corporation not responsible to the Counties or to the State except that it must function within such statutes as may be enacted by the State Legislature. * * *

    *    *    *    *    *    *

    By no definition could I be held to be "an officer of a political subdivision: A

---

11. The following subdivisions were so named: Housing Authority of Baltimore City; Housing Authority of the City of Hagerstown; Mayor and Council of Snow Hill; The Mayor and Commissioners of Luke; Mayor and Council of Easton; Chevy Chase Village; Town of Somerset; Commissioners of Aberdeen; Board of Education of Worcester County.

12. Peterson is, however, represented by counsel in his appeal to this Court.

political subdivision is a division of government. The WSSC is not a political entity. It is not a subdivision. It is not a division of government. It is a Sanitary District conforming to physical and engineering . . . not political—boundaries. It provides a utility service for a charge. It is not a political subdivision.

Additionally, Peterson states that his duties as a WSSC Commissioner more closely resemble those of a member of a board of directors than a corporate officer, and thus that he is not an "officer" of a political subdivision within the meaning of 42 U.S.C. § 418, citing 20 C.F.R. § 404.1004(b), which provides:

> *Corporation officers.* Generally, an officer of a corporation is an employee of the corporation. However, an officer of a corporation who as such does not perform any services or performs only minor services and who neither receives nor is entitled to receive, directly or indirectly, any remuneration is not considered to be an employee of the corporation. A director of a corporation in his capacity as such is not an employee of the corporation.

The question of whether Peterson is an officer of the State of Maryland or of a political subdivision of the State of Maryland leads to an examination of Maryland law. *Cf. State of Nebraska v. Finch,* 339 F.Supp. 528, 530 (D.Neb.1972). Both the SSA's Reconsideration Determination (Ad. Rec. at 81) and a January 21, 1973 letter addressed to Peterson by Robert M. Ball, Commissioner of Social Security (Ad.Rec. at 74), have expressly stated that that question *is* one of state law. *See also* the remarks of Judge Bennett at Ad.Rec. pp. 33–35.[13]

Judge Bennett never expressly indicated whether, or on what basis, he concluded that Peterson was an "officer" of the WSSC. However, Friedenberg's October 17, 1974 letter to Peterson stated as follows:

Under section 218(b) of the Act, the term "employee" includes an officer of a state or political subdivision. Some of the characteristics of a public officer are that he participates in the sovereign powers of the State, his duties are continuing, and he is paid on a salary rather than a fee basis.

A letter dated October 6, 1972, from Mr. John Kenkel indicates that you served in an office established by law, that you were appointed by a county governing body, and that you may have been discharged for good cause. Further, although he states the law does not specify your duties, you did participate in the sovereign powers of the State by discharging some of the functions of government. Finally, you were paid on a salary rather than a fee basis.

Therefore, the evidence of record indicates that you were a public officer of the State of Maryland or one of its political subdivisions and would also be considered an employee within the meaning of section 218(b)(3) of the Act.

(Ad.Rec. at 5–6).

Similarly, the SSA's May 7, 1973 Reconsideration Determination includes the following statement:

Section 218(b)(3) of the Act clearly states that the term "employee" includes an officer of a State or political subdivision. The determination as to who is a public officer of a State or political subdivision is based on State law. The file contains information received by the Administration from Mr. John B. Kenkel, General Counsel for the Commission which indicate that Mr. Peterson is a public officer since he advises that the Commission members serve in a statutory office to which they are appointed by the county governing body. As an officer of a political subdivision Mr. Peterson is an employee within the meaning of Section 218(b)(3) and the payments made to him

13. What result would obtain in this case if Maryland law were at odds with the provisions of applicable federal statutory law is an issue which this Court need not address herein since no such conflict would seem to exist.

are wages reportable by the State under its coverage agreement.

(Ad.Rec. at 81). *See also* Ad.Rec. at 74.

In a letter dated October 6, 1972, Kenkel wrote (*inter alia*):

I do not see how Commissioner Peterson could be considered a worker or employee of the Washington Suburban Sanitary Commission. There is nothing in the organic State law (Chapter 122 of the Acts of 1918, as amended, Laws of Maryland) or the Commission's regulations specifying the duties of a member of a governing body, must less any provision as to time, manner or mode of conduct of a Commissioner's activities. As I view it, each Commissioner must determine for himself his responsibilities under his appointment, and decide for himself the degree to which he will participate in the operation, administration and decision-making process of this agency. Within normal legal strictures, a Commissioner is responsible to no one but himself as to the manner in which he requites the statutory office. I would point out that the Commissioner does not receive any of the benefits established by the Commission for its employees and workers, *e. g.,* tenure, retirement program, life insurance, sick leave, vacation leave, etc.

There is no hiring-firing relationship between the Commission and a Commissioner. A member of the Commission takes his office upon appointment by the County governing body (nomination by the County Executive and confirmation by the County Council) and he may be removed from office only for good cause, and then only on recommendation of the County Executive and approval of the County Council for the County from which he was appointed.

From the above summary, I think you can see the unusual and atypical position of a WSSC Commissioner, and why I commenced this report with the view that I do not think it is possible to categorize Commissioner Peterson as an employee or worker of the Commission under normal

definition of the term "employee" or "worker."

I would not view Commissioner Peterson's relationship with the WSSC as within the "substantial services" category described in OASI Bulletins, in light of the personal discretion as to time, scope and method of position activity which only he can report upon. Finally, in the event you would want my comment on the OASI deductions being made on the Commissioners' account it is this:

The issue of deductions has not been posed previously, possibly in light of the relatively small amount involved, and with WSSC disbursements on a computer basis it is easier to apply the same deduction factor to checks for both employees and members of the Commission than to "disengage the wheels" in the atypical category occupied by Commissioner Peterson.

(Ad.Rec. at 67–68).

Section 418(a)(2) contains the overriding and controlling provision which permits a section 418 agreement itself to bring within the Act's definition of "employment" "any service included under an agreement entered into under this section." Sections 418(b)(2) and (3) provide that an "officer" of "a State" or of "one or more of its political subdivisions" is an employee within the meaning of the Act. 20 C.F.R. § 404.-1004(b) distinguishes between an "officer" and a "director". No Maryland statute, regulation, or opinion of any Court which is of aid in determining whether a WSSC Commissioner is an "officer" or a "director" is known to this Court. Several decisions in other jurisdictions, while rendered in other contexts, appear to support the Secretary's determination. Cf. *Bloomfield Village Drainage District v. O'Keefe,* 119 F.2d 157, 161 (6th Cir.), *cert. denied,* 314 U.S. 649, 62 S.Ct. 95, 86 L.Ed. 520 (1941) (county drain commissioner is "an officer representing the drain district" under Michigan law); *Commonwealth v. Howard,* 379 S.W.2d 475, 476–77 (Ky.1964) (water district commissioner is a public officer under Kentucky law).

The Administrative Law Judge has concluded that Peterson, as a WSSC Commissioner, is an officer of that body. The facts set forth in the record, even in the absence of any supporting suggestions in the above-cited cases, plus certain of the provisions of Chapters 115 and 122 of the Laws of Maryland, 1918,[14] may perhaps lend some support to that factual determination. The record discloses that Peterson's duties as a member of the WSSC require meeting once a week for four hours. The salary—not total fees—of the position is $6200 per annum. It is arguable that although the line is a thin one and hard to locate, a WSSC Commissioner "feels" more like a corporate officer than a corporate director. However, a "feel" is hardly enough in a case like this, particularly since it apparently is currently possible on remand for the administrative body to conduct further proceedings in which there can be detailed, specific presentation of, inquiry into, and determination of the duties of a WSSC Commissioner, exactly what he does and how he relates to other officials and supervisory employees of the Commission, all of which is desirable before an ultimate determination is made as to whether Peterson is or is not an "officer" pursuant to section 418(b)(3).

The Government argues that the word "officer" has a statutory meaning and should neither be accorded its common law meaning nor be considered in the light of 20 C.F.R. § 404.1004(b) which, the Government contends, applies only to officers and directors of private corporations and in addition reflects a common law approach not applicable to section 418(b)(3). Those arguments, advanced by the Government in this Court, were not fully dealt with in the determinations and opinions filed by the Administrative Law Judge or by the Appeals Council. On remand, exploration and determination in those regards is advisable. In sum, on remand, further facts should be found and further legal principles should be developed as to whether Peterson, as a WSSC Commissioner, is or is not an "officer" within the meaning of section 418(b)(3). The extent, if any, to which Peterson, on remand, has the burden of coming forward with evidence and/or the burden of proof with regard to the question of whether he is an "officer" of the WSSC is an issue discussed briefly during oral argument in this Court. That issue should also be resolved during the administrative proceedings as and if same proves necessary. Even assuming Peterson will have those

14. Section 2 of Chapter 122 provides, in part:

* * * [F]or the purpose of carrying out the provisions of this Act, said Sanitary District shall be under the jurisdiction of a Commission of three members, one to be appointed by the County Commissioners of Montgomery County, one by the County Commissioners of Prince George's County, both upon the recommendation of the State Board of Health of Maryland, and the third to be named by the Governor of Maryland, the first appointments hereunder to be made on or before May 1, 1918, upon which date the terms of office shall begin. All appointees shall be residents and taxpayers of said Sanitary District and shall serve for four years, or until their successors are appointed and have qualified. Upon the expiration of the terms of the members of said Commission, their successors shall be named in the same manner as the original appointments were made. Any vacancy occurring at any time in the personnel of the Commission shall be filled by the agency making the original appointment and for the unexpired term. The annu-

al salary of each of said Commissioners shall be two thousand dollars, payable monthly. The Commission shall elect one of its members chairman, and shall appoint, discharge at pleasure, and fix the compensation of a secretary-treasurer, a chief engineer, and other force and help as, from time to time in its judgment may be deemed necessary to carry out the provisions of this Act. Said Commission shall annually publish in at least one newspaper in Montgomery County and one in Prince George's County a full and true account of its receipts, expenses and expenditures. Prior to such publication said accounts shall be fully audited by a certified public accountant to be employed and paid by said Commission.

Section 3 of Chapter 122 provides, in part:

* * * [T]he members of said Commission shall be a body corporate, by the name of the "Washington Suburban Sanitary Commission," with the right to use a common seal, to sue and be sued, and to do any and all other corporate acts for the purpose of carrying out the provisions of this Act. * * *

burdens and had those burdens during the proceedings under review herein by this Court, the sparseness of the factual record as to the duties imposed upon and performed by Peterson and the lack of exploration during those latter proceedings of the legal meaning of the word "officer" as used in section 418(b)(3) suggests the advisability of a remand at this time.

The question remains as to whether Peterson was an officer of a "political subdivision" within the meaning of section 418(b)(3). It is not entirely clear on what basis the SSA determined herein that the WSSC constitutes a "political subdivision" of the State of Maryland. Neither the Appeals Council, Judge Bennett nor any other SSA official has ever specifically addressed that question. After accepting "without qualification" (Ad.Rec. at 15) certain letter opinions of the County Attorney for Montgomery County and of the General Counsel

of the WSSC, "[i]nsofar as these letter opinions interpret the law of Maryland", which opinions included the conclusion that the WSSC is *not* such a subdivision,[15] Judge Bennett, without explaining the basis for his position, himself stated a conclusion seemingly reachable only by rejection of the County Attorney's view. That rejection would nonetheless appear required. The County Attorney for Montgomery County has stated that article 23A, § 9 of the Annotated Code of Maryland (1973 Repl. Vol.) provides that the WSSC is not a political subdivision of the State. However, a careful reading of that statute reveals that it provides only that the WSSC is not a "municipal corporation" of the State.[16] As to section 418 of the federal statute, subsection (b)(2) thereof specifically states:

(2) The term "political subdivision" includes an instrumentality of (A) a State, (B) one or more political subdivisions of a

15. The following paragraph was included in a letter dated April 23, 1974 addressed to Peterson by the County Attorney for Montgomery County:

Please be advised that it is the opinion of this office that appointed Commissioners of Bi-County Agencies, including the Washington Suburban Sanitary Commission, are not officers or employees of Montgomery County. The Sanitary Commission is an independent State Agency existing soley [sic] by virtue of state law and you cannot be considered an employee or office [sic] of the County. Once appointed, Commissioners are not directly responsible to the County. Unlike officers and employees of the County, neither the County Executive nor the County Council can direct your actions as a Commissioner. Pursuant to law, Section 1–3 of the Washington Suburban Sanitary District Code, the members of the Commission are a "body corporate" with all of the powers incident thereto. In addition, it is significant to note that pursuant to Article 23A, Section 9 of the Annotated Code of Maryland (1973 Repl.Vol.) the *Washington Suburban Sanitary Commission while a body corporate, is not a political subdivision of the State.* [Emphasis supplied.] [Ad.Rec. at 87.]

16. Article 23A, § 9 provides, in part:
§ 9 *Definitions and limitations.*
(a) *"Municipal corporation" defined; construction of article and certain local laws.* —As used in this subtitle the term "municipal corporation" shall include all cities, towns and villages, now or hereafter created under any general or special law of this State

for general governmental purposes, which are subject to the provisions of Article 11E of the Constitution of Maryland, which possess legislative, administrative and police powers for the general exercise of municipal functions, and which carry on such functions through a set of elected and other officials. The term is not to include any special tax area or district, sanitary district, park or planning district, soil conservation district or other public agency exercising specific powers within a defined area but which does not exercise general municipal functions and the term is not to include the mayor and city council of Baltimore. * * * The General Assembly hereby finds, determines and declares that the term "municipal corporation" in Article 11E of the Constitution of Maryland does not embrace or include any such special tax area or district or the board, commission, authority or public corporation administering the same.

(b) *Certain corporations excepted.—The term "municipal corporation" does not embrace or include the Washington Suburban Sanitary Commission, or the Washington Suburban Sanitary District under the jurisdiction of such Commission;* the term "municipal corporation" does not embrace or include the Maryland-National Capital Park and Planning Commission, or the Maryland-Washington Metropolitan District or the Maryland-Washington Regional District under the jurisdiction of such commission. [Emphasis supplied.]

State, or (C) a State and one or more of its political subdivisions.

Under Maryland statutory law, the term "political subdivision" is defined, for purposes of the State's entry into section 418 agreements, as follows:

(f) The term *"political subdivision"* includes *an instrumentality* of the State, of one or more of its political subdivisions, *or of the State and one or more of its political subdivisions, but only if such instrumentality is a juristic entity* which is legally separate and distinct from the State or subdivision and only if its employees are not by virtue of their relation to such juristic entity employees of the State or subdivision. [Certain emphases supplied.]

6 Md.Ann.Code art. 73B, § 36 (1970 Repl. Vol.). In the light of that wording and of the wording of section 410 [17] of the federal statute and in the absence of any contrary statutory provision, regulation or interpretation thereof indicating that the WSSC is or is not either a political subdivision of the State of Maryland or an instrumentality of the State of Maryland or of one or more of its political subdivisions, the decision of the State of Maryland to enter into a section 418 agreement specifically providing coverage to employees of the WSSC strongly suggests Maryland's own interpretation of the term "political subdivision" as used in section 418 of the federal statute and in the above-quoted Maryland statute to include the WSSC.

■ Plaintiff himself alleges in his complaint that the "WSSC is a corporation which *carries out the functions of* the Washington Suburban Sanitary District." (Emphasis supplied). As such, the WSSC is an "instrumentality" of the Washington Suburban Sanitary District. A sanitary district has been deemed in other instances to be a political subdivision of a state. *See* 39 C.J.S. *Health* § 5 at p. 814 (1944 ed.) and cases cited thereat. It would appear that the WSSC, which was in 1918 created by the legislature of the State of Maryland, and which performs numerous functions which can be characterized as governmental in nature,[18] is an "instrumentality" of the State of Maryland. Further, with reference to the above-quoted provisions of 6 Md.Ann.Code art. 73B, § 36 it would appear that the WSSC is "a juristic entity" legally separate from the State of Maryland and Montgomery County and that the employees of the WSSC are not employees of the State of Maryland or of Montgomery County, but rather are employees of the WSSC itself. Accordingly, it follows that the employees of the WSSC are employees of a political subdivision within the meaning of both 6 Md.Ann.Code art. 73B, § 36 and of 42 U.S.C. § 418(b)(3).

\* \* \* \* \* \*

■ For the reasons stated *supra,* this case is hereby remanded to the Secretary for further administrative proceedings to determine whether Peterson is or is not an "officer" within the meaning of section 418(b)(3). If Peterson is determined to be such an "officer", then the performance of his duties as a WSSC Commissioner is "employment", and he is an employee within the meaning of sections 410(a), 418(a)(1) and (2), and 418(b)(2) and (3).

17. *See* p. 1311 *supra.*

18. *See* section 3 of Chapter 122 of the Laws of Maryland (1918), which provides that the members of the WSSC are a body corporate "with the right to use a common seal, to sue and be sued, and to do any and all other corporate acts for the purpose of carrying out the provisions of this Act", which purposes included providing for the construction, maintenance, operation, purchase or condemnation of water supply, sewerage and refuse disposal systems, providing for the issuance of bonds for the purpose of such construction, and the levying of taxes, assessments and benefits, water charges and rates for the payment of such bonds, and the operation, maintenance, regulation and control of said systems. *See City of Bowie v. Washington Suburban Sanitary Commission,* 249 Md. 611, 613, 241 A.2d 396 (1968).