Ms. Dona Marion Program Administrator Public Employees' Social Security Section Department of Labor and Employment State of Colorado 600 Grant Street Denver, Colorado 80203
Dear Ms. Marion:
This opinion responds to your September 10, 1990 inquiry about whether Colorado district attorneys, as State Officers, were employees of the state for the purposes of the Social Security Act. Your request referenced an October 11, 1984 Denver District Court decision, and a July 21, 1976 Opinion of former Colorado Attorney General J.D. MacFarlane.
QUESTION PRESENTED AND CONCLUSION
Your request for an Attorney General's Opinion presents the following questions:
 Are Colorado district attorneys subject to coverage under the federal Social Security Act?
No.
ANALYSIS
The primary purpose of the federal social security system is "to provide workers and their families with basic protection against hardships created by the loss of earnings due to illness or old age." Mathews v. de Castro, 429 U.S. 181, 185-86
(1976); Brown v. Bowen, 905 F.2d 632 (2d Cir. 1990);Gordon v. Schweider, 725 F.2d 231 (4th Cir. 1984). States, however, have considerable discretion in including or excluding its own employees in the social security program. The Social Security Act expressly excludes coverage for any "[s]ervice performed in the employ of a State, or any political subdivision thereof . . .," 42 U.S.C. § 410(a)(7), unless the federal and state governments agree to include employees of a state and/or its political subdivisions in the social security program, 42 U.S.C. § 418. (42 U.S.C. § 418 is § 218 of the Social Security Act, and shall be referred to hereafter as either 42 U.S.C. § 418 or " § 218").
In 1951, Colorado and the federal government entered into an agreement to extend social security coverage to employees of certain political subdivisions of the State. The political subdivisions enumerated in the original agreement included counties, cities, towns, irrigation and sanitation districts, libraries, and other local political entities, but it did not include employees of the State of Colorado.
From 1951 through 1975, some counties assumed that the district attorneys and their offices came within the scope of the state-federal agreement as employees of a political subdivision of the State. This misconception stemmed in part from the fact that district attorneys were responsible for, and were elected by voters in multi-county judicial districts. During this time, some counties took deductions from its share of the district attorney's salary for social security purposes. Other counties did not make such deductions. Prior to 1977, the State at no time took deductions for social security from the amount it paid directly to a district attorney.
In 1975, the Colorado General Assembly passed § 20-1-307, C.R.S. (1986), which, effective January 1, 1975, made the office of district attorney a "juristic entity" within the meaning of § 24-51-701, C.R.S. (1986). This statute had the effect of bringing district attorneys' offices within the scope of §24-51-704, C.R.S. (1986), which enabled the state to enter into agreements with the federal government to include political subdivisions in social security.[1] Section 20-1-307
further directed each office of the district attorney to enter into an agreement with the Colorado Department of Labor and Employment for the purpose of including that office under the state-federal social security coverage agreement.
The Public Employees' Social Security Section (hereafter "PESSS") of the Department of Labor and Employment apparently understood § 20-1-307 to mandate social security coverage for district attorneys and their staffs, as employees of political subdivisions. PESSS therefore initiated Modification 245, executed by Colorado on December 18, 1975, and effective January 1, 1975, extending social security coverage under the 1951 state-federal agreement to district attorneys' offices for the State's 22 judicial districts.
The Social Security Administration (hereafter "SSA") initially did not accept Modification 245, since it felt that the district attorneys' offices were not political subdivisions under the Social Security Act. On July 21, 1976, former Colorado Attorney General J.D. MacFarlane issued an opinion that the district attorneys offices were political subdivisions as set forth in42 U.S.C. § 418 and § 24-51-701. Modification 245 was approved by SSA in the fall of 1976.
In May 1976, the Colorado Legislature had enacted §§ 24-51-141 and -142, C.R.S. (1986), effective January 11, 1977.See 1976 Colo. Sess. Laws 635, § 1. Section 24-51-141(1) provided that all district attorneys "shall be included" within the membership of Colorado's Public Employees' Retirement Association (hereafter, "PERA"), which covers all state employees. §§ 24-51-101(20) and -301, C.R.S. (1988). Section 24-51-141 stated that on or after January 11, 1977, all incoming district attorneys "shall become members" of PERA unless he or she elected not to become a member of PERA. Section 24-51-142(4) allowed district attorneys who exercised such an election to participate in "any qualified county retirement plan offered by any county or counties within his judicial district, including a public employees' social security plan under part 7 of this article. . . ." Attorney General MacFarlane did not refer to the 1976 legislation at any point in his July 21, 1976 opinion.
Based on the 1976 statutes, some district attorneys concluded that they had the option of joining PERA or of making payments to social security through PESSS. Many terminated their payments to PESSS and began to make payments only to PERA. Others entered into social security agreements with the state voluntarily, and still others did so involuntarily. SSA continued to assess Colorado amounts for all of the district attorneys' salaries. PESSS continued to take the position that the district attorneys were covered by social security under the state-federal agreement.
In 1978, PESSS filed a declaratory judgment suit in Denver District Court (Case No. 81CV7682) against the various district attorneys and their respective counties. PESSS requested that the court determine whether district attorneys were employees of the state excluded from social security coverage or employees of political subdivisions included in the social security program. On October 11, 1984, Denver District Court Judge Sandra I. Rothenberg found that: (1) district attorneys were state officers and state employees not subject to social security coverage under § 20-1-307 or § 24-51-142(4); and (2) PESSS did not have the authority to assess district attorneys for contributions to the social security fund. The court directed the state to apply to SSA "for error modifications to address the equities of each individual [district attorney] concerning their contributions and their right to future benefits."
PESSS, through this office, informed SSA's Denver District Office of the Denver District Court's decision by letter dated November 2, 1984. In that letter, PESSS requested the initiation of error modification procedures or whatever other actions which were necessary to effectuate the order of the court. It is unclear what response, if any, SSA made to this request. It appears that both PESSS and SSA did nothing further until October 11, 1988 when SSA took action indicating its belief that Colorado's district attorneys are still covered under social security pursuant to Modification 245.
Whether the district attorneys fall within Modification 245, and thus within social security, depends upon whether they are considered to be employees of the state or employees of a political subdivision for social security purposes. "The determination as to who is a public officer of a State or a political subdivision is based on State law." Peterson v.Mathews, 414 F. Supp. 1306, 1310 (D.Md. 1976). Seealso Attorney Registration and Disciplinary Comm'n v.Harris, 595 F. Supp. 107, 112 (N.D. Ill. 1984);Snell, 416 F.2d 840, 843 (5th Cir. 1969).
The office of district attorney is one created by state law in Colo. Const. art. VI, § 13. The district attorney, while serving a "judicial district" as set forth in Colo. Const. art. VI, § 10(1), subscribes to an oath to support the laws of the State of Colorado. § 20-1-101, C.R.S. (1986). He or she appears on behalf of the state and the several counties within the judicial district, to prosecute the criminal laws as set forth by the Colorado General Assembly in Title 18 of the Colorado Revised Statutes. Additionally, since July 1, 1972, the state pays 80 percent of a district attorney's salary,[2] with the counties in his or her judicial district paying the balance of that salary. Section 20-1-306, C.R.S. (1986). See 1972 Colo. Sess. Laws 295. The State contributes 80% of employer contributions for the district attorneys' membership in the Public Employees' Retirement Fund. § 24-51-305, C.R.S. (1988).
A substantial body of caselaw exists in Colorado recognizing a district attorney is a "state officer," and not an officer of the judicial district he or she represents. E.g.,Beacom v. Board of County Comm'rs, 657 P.2d 440, 445-46
(Colo. 1983) ("The district attorney, although elected from a judicial district as provided in Colo. Const. art. VI, § 13, is not a member of the judiciary. Rather, the district attorney is an executive officer of the state."); People v.Losavio, 199 Colo. 212, 606 P.2d 856 (1980) (district attorney is a state officer and may only be removed from office by statute providing that exclusive method for removing state officer is impeachment); Johns v. Miller, 42 Colo. App. 97,594 P.2d 590 (1979) (district attorney is a state officer whose reimbursements for expenses are governed by statute pertaining to mileage allowance for state officers and employees); Anderson v. Adams County, 41 Colo. App. 441,592 P.2d 3 (1978) (district attorney is not an agent or employee of the county but a state officer serving a particular judicial district, independent of the county government, with authority to hire and fire his own employees). See alsoTisdale v. Board of County Comm'rs, 621 P.2d 1357 (Colo. 1980) (district attorneys are state public officers subject to Colo. Const. art XII, § 11, which prohibits the increase of any elected public officer's salary during the term for which the officer was elected).
Colorado law is well-settled, then, that district attorneys are "state officers." And, for purposes of applying § 218 state-federal social security agreements, "[t]he term `employee' includes an officer of a State or political subdivision."42 U.S.C. § 418(b)(3). See Peterson v.Mathews, 414 F. Supp. 1306, 1310 (D.Md. 1976) (same). Because the district attorney is considered to be a "state officer," he should likewise be a state employee for social security purposes, rather than an employee of the political subdivision. As such, the district attorney was not subject to social security coverage under the original § 218 agreement and could not have been subjected to coverage under Modification 245 either.
My opinion in this regard does not directly conflict with that of former Attorney General MacFarlane. In his opinion, Attorney General MacFarlane primarily addressed the question whether the offices of the district attorneys could be considered juristic entities covered by social security. He reviewed the facts that each office represents a fixed geographic area and a specific body of electors, that the offices are responsible for carrying out duties which are public and governmental in nature, that the offices are separate and distinct from both the state and the counties which they serve, and that the offices have the ability to hire, fire and establish policy for their employees. His conclusion, that "the offices of the district attorneys can be and are political subdivisions for the purposes intended by [1975] H.B. 1031, C.R.S. 1973, 20-1-307, i.e. a proper coverage group for social security purposes," was correct.[3]
It is incomplete, however, to the extent that it did not specifically consider the issue of district attorneys as state officers and employees and how that effects their coverage under social security.
Admittedly, Attorney General MacFarlane expressed the view that the district attorneys and their staffs "had been covered under the Act and the state's agreement as employees of the state and counties they served." This view was premised upon PESSS's having made contributions for certain district attorneys prior to 1975 on the erroneous assumption that they were employees of the counties comprising the judicial district in which they served. In his opinion, Attorney General MacFarlane did not consider the effects of the 1976 legislation providing PERA coverage for the district attorneys in §§ 24-51-141 and -142. Although this legislation does not mean that district attorneys were already covered by a retirement system when the modification was executed in 1976, it does show the policy which the Legislature sought to advance in providing district attorneys with retirement coverage. The history of the 1975 and 1976 legislative enactments evidences an evolving process by which the Colorado Legislature separately addressed the retirement needs of the district attorneys and their offices.
PESSS improperly construed the provisions of § 20-1-307 in 1975 when it included the individual district attorneys with their respective offices in promoting Modification 245. Since its implementation of the statute was contrary to the intent demonstrated by the Colorado Legislature, PESSS lacked the authority to include the district attorneys as employees of the political subdivision in Modification 245 from the outset.See Securities Industry Ass'n v. Board of Governors ofFederal Reserve System, 468 U.S. 137, 104 S.Ct. 2979,82 L.Ed.2d 107 (1984) ("Reviewing court must reject administrative constructions of a statute that are inconsistent with the statutory mandate or that frustrate policy that [legislature] sought to implement.").
The opinion which I express here is the only interpretation which avoids a direct conflict between the provisions of § 20-1-307
and § 24-51-141. See Mooney v. Kuiper, 194 Colo. 477,573 P.2d 538 (1978) (where separate statutory clauses may be harmonized by one construction, but would be antagonistic under a different construction, the harmonizing construction is favored);Bitts v. Board of Adjustment, 765 P.2d 784 (Colo.App. 1987) (same). It also avoids placing PESSS in the untenable position of financial responsibility to SSA for assessments on the district attorneys up to 1987,[4] while being forbidden to collect from the district attorneys for such contributions by a final state court order.
Finally, my opinion is consistent with the policy which is the basis of § 218 agreements. As stated above, the Social Security Act is remedial legislation designed to provide some expectation of security to individuals with the advent of age or infirmity. However,
 [t]he thrust of the statute [42 U.S.C. § 418] is opportunity of the state to bring its employees within reach of benefits, either state or federal, by an effectual state-triggered meshing of the systems. It is not one of federal commitment to close every state-caused loophole or hiatus in the state benefit system.
Snell, 416 F.2d at 843 (emphasis added).
There is no compelling reason for SSA to insist on coverage for district attorneys. Section 218 agreements were not intended to encompass employees whose positions are already covered by a state retirement system. Id. The short amount of time during which the coverage of the individual district attorneys was unclear amounts, at worst, only to that type of "loophole" which the court in Snell described.
SUMMARY
For purposes of the Social Security Act, Colorado's district attorneys are state employees who are not covered by social security.
Sincerely,
 DUANE WOODARD Attorney General
SOCIAL SECURITY RETIREMENT SYSTEMS RETIREMENT SYSTEMS PROSECUTORS
42 U.S.C. § 410(a)(7)42 U.S.C. § 418
Section 20-1-307, C.R.S. (1988) Section 24-51-141 and 142, C.R.S. (1986)
LABOR EMPLOYMENT DEPT. Pess Public Emp Soc Sec.
District attorneys are not subject to coverage under the federal Social Security Act.
[1] Section 24-51-701, C.R.S. (1986) is now 24-53-101, C.R.S. (1988), and 24-51-704, C.R.S. (1986) is now 24-53-104, C.R.S. (1988). See 1987 Colo. Sess. Laws 1092, 7. Since many of the original provisions which are critical to this analysis have been amended, renumbered, or repealed, the original statutory citations are used. The new statutory citations to these laws will be indicated initially by footnote where needed for reference purposes.
[2] Up to a maximum $38,000, as of January 8, 1975.See 20-1-306, C.R.S. (1986).
[3] I do not, then, disagree that the employees of the offices of the district attorneys are employed by a political subdivision of a state and, hence, are properly within the social security system.
[4] Beginning January 1, 1987, covered political subdivisions became directly responsible for contributions under the Social Security Act. Sections 24-53-103 and -104, C.R.S. (1988).