STATE, EX REL. C. B. WOOLSEY ET AL., RELATORS, V. J. B. MORGAN, COUNTY CLERK, RESPONDENT.

294 N. W. 436

FILED OCTOBER 19, 1940. No. 31106.

*Harry A. Spencer, J. A. Brown, G. E. Price* and *William O. Brown,* for relators.

*Max G. Towle* and *Farley Young,* for respondent.

*Bruce Fullerton, J. Jay Marx, J. Victor Eithel, Dwight Dahlman, Joseph Ginsburg, Charles H. Flansburg* and *Charles Ledwith, amici curiæ.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, MESSMORE and JOHNSEN, JJ.

SIMMONS, C. J.

This case presents the question: Is Legislative Bill No. 350, being chapter 46, Laws of Nebraska 1937, page 191, unconstitutional and void?

The question is presented in an application, original in this court, for a writ of mandamus commanding the respondent to place the names of the relators as candidates for the office of justice of the peace in precincts outside the city of Lincoln on the official ballot. The application alleges that relators have been and now are justices of the peace, and are the duly nominated candidates for the office of justice of the peace in their precincts; that the respondent has the duty of compiling and printing the official ballots for the general election to be held November 5, 1940; that it is his duty to place the names of relators on said ballots, and that he unlawfully refuses to do so.

The respondent for answer sets up the passage by the legislature of L. B. 350, that all offices of justice of the peace in Lancaster county have been abolished, and that there can be no candidates for offices that no longer exist.

Relators by reply allege that for 14 specific reasons L. B. 350 is unconstitutional and void.

A previous act of the legislature attempting to accomplish the same result as L. B. 350 was held unconstitutional and void in *State v. Brown*, 131 Neb. 239, 267 N. W. 466. The decision there rested upon the proposition that the act in question did not give the electors of Lancaster county, residing outside the city of Lincoln, the right to vote for the judge of the court.

"The judicial power of the state shall be vested in a supreme court, district courts, county courts, justices of the peace, and such other courts inferior to the supreme court as may be created by law; but other courts may be substituted by law for justices of the peace within such districts, and with such additional civil and criminal jurisdiction as may be provided by law." Const. art. V, sec. 1.

The questions to be determined here are: What is the meaning of the clause, "but other courts may be substituted by law for justices of the peace within such districts?" Has the legislature acted within the power conferred upon it by the Constitution?

This language was placed in the Constitution as a result

of the recommendation of the Constitutional Convention of 1920. An examination of the journal of the convention reveals that it had before it a proposal (No. 143) to give the legislature power to *"alter or abolish* any such courts inferior to the district courts as now exist and confer their powers and jurisdiction upon other courts." This proposal was rejected, and, in lieu thereof, the committee on Judicial Department recommended the adoption of substantially the present provision. 1 Proceedings of Constitutional Convention, 1919-1920, p. 676. Mr. Heasty, chairman of the committee, in making his report addressed the convention in part as follows:

"The committee, in the course of its deliberations, reached the conclusion that the courts of justices of the peace should not be abolished. There were proposals before us, and some members of the committee favored abolishment of the justice of the peace courts and others said they were a 'poor man's' court. We concluded further, that an institution which had existed in this country since the beginning, more than 140 years in constant use, should not be abolished, and we therefore concluded to retain in that section courts of justices of the peace, but we decided that in certain of the larger towns and counties it might be advisable to substitute for the justice of the peace other courts of more extended jurisdiction, and we therefore, by that section, authorized the legislature to provide for courts as substitutes for courts of justice of the peace, and authorized the legislature to give to those courts additional jurisdiction if they saw fit to do so." 1 Proceedings of Constitutional Convention 1919-1920, p. 994.

It therefore appears that the framers of the constitutional provision contemplated that the legislature should not have an unqualified power to abolish the justice of the peace courts, but that, if justice of the peace courts were to be abolished, "other courts" in the justice of the peace "districts" must be put in their place. This is in accord with Webster's definition of "substitute" which is, "to put in the place of another person or thing; to exchange."

The legislature then has the power to abolish justice of the peace courts only as an incident to the exercise of the power to substitute "other courts" for the justice of the peace courts. The substituted court must be one which, as minimum requirements, has the jurisdiction, fully and completely performs the functions, and takes the place of the justice of the peace courts for which it is substituted. If the act does not perform such a substitution, then it must fail because of a lack of constitutional power in the legislature.

Section 5 of L. B. 350 amends section 32-217, Comp. St. 1929, and states that "municipal courts * * * are hereby substituted by law for justices of the peace and police judge within such justice of the peace districts." Obviously, the legislative declaration that the one is being "substituted" for the other is not conclusive. The question is, what is the effect of the legislative act taken as a whole? Has it merely abolished justice of the peace courts in Lancaster county, or has it abolished them only as an incident to the substitution of another court within the district in their stead?

To answer these questions, we must determine first the structure, jurisdiction, functions, and nature of the municipal court which the legislature declares that it is substituting for the justice of the peace courts in Lancaster county. Is it a court that may, within the constitutional authority, be "substituted" for the justice of the peace courts, without the city of Lincoln and *within* Lancaster county?

The municipal court is a court "established and created *in each city*" held "*within such city.*" The *city* must provide courtrooms, equipment, and necessary help. Comp. St. 1929, sec. 22-101.

"*In cities*" (of the class of Lincoln) "there shall be elected one judge of the municipal court," and as provided by the act in question, "in all justice of the peace districts wherein municipal courts shall be substituted by law for justices of the peace within such districts, the judges of such municipal court shall be elected by all the electors within such justice of the peace district." Comp. St. Supp. 1937, sec. 22-102.

(This and other like amendments to sections 32-213, 32-216, 32-217, 15-110, 16-105, 32-215, Comp. St. 1929, appear to have been passed in view of the decision of this court in *State v. Brown, supra.*) "No person shall be eligible to the office of judge of the municipal court unless he be * * * *a resident of* the city for at least five (5) years next preceding his election or appointment * * *." Comp. St. 1929, sec. 22-103. The salary of the clerk "shall be fixed by the *city council*" and all salaries shall be paid "out of the general fund of such *cities.*" Comp. St. 1929, sec. 22-106. The "clerk shall be *a resident of the city*," he shall execute a bond *"in favor of the city*," he shall pay all fees and costs earned by the court *"into the city treasury;*" all unclaimed witness fees are *"forfeited to the city*" and required to be paid to the *city* treasurer. Comp. St. 1929, sec. 22-108. The *city clerk* or comptroller shall audit the books of the clerk of the municipal court "in the same manner as * * * with *other* city officials." Comp. St. 1929, sec. 22-112. All fees paid by the clerk to the treasurer shall be placed to the credit of the general fund of the city. Comp. St. 1929, sec. 22-113. Its jurors in civil actions must be "citizens of the municipality." Comp. St. 1929, sec. 22-904. (A jury before a justice of the peace is drawn from "citizens of the county." Comp. St. 1929, sec. 21-904.)

Section 22-201, Comp. St. 1929, provided that the jurisdiction of the municipal court of Lincoln is "coextensive with the county." The act under question amends this clause so as to provide that the municipal court shall have jurisdiction "over territory coextensive with the boundaries of the justice of the peace districts in which such courts are located" (which in this instance are the same, for by section 5-106, Comp. St. 1929, justice of the peace district No. 10 "shall consist of the territory within the county of Lancaster"). *"The judges* of the municipal court shall also exercise the ordinary powers and jurisdiction of justices of the peace." Comp. St. 1929, sec. 22-203.

The analysis of the act heretofore given establishes the fact that the municipal court is a city court, its officials are

residents of the city, it is operated and controlled by the city, its expenses are paid by and its revenues inure to the benefit of the city, and it exists primarily for the use and benefit of the city and to serve its governmental functions. It is a court of the city and not of the justice of the peace district comprising Lancaster county. This conclusion is recognized by this court in *State v. Hunter,* 99 Neb. 520, 156 N. W. 975, *State v. Brown, supra,* and *State v. Kubat,* 110 Neb. 362, 193 N. W. 754.

"In this country it is usual to provide in the charter or organic act of a municipal corporation for a local or special tribunal * * * which is invested with jurisdiction over complaints and prosecutions for the violation of the ordinances of the corporation, and often, for public convenience, with special civil and limited criminal jurisdiction under the laws of the state." 2 Dillon, Municipal Corporations (5th ed.) sec. 744.

Although the legislature has extended the territorial jurisdiction of the court beyond the city and to and inclusive of the county, the municipal court here discussed remains essentially a tribunal of the city of Lincoln.

Other changes made in the law by the act should be noted. Section 32-217, Comp. St. 1929, provided for the substitution of municipal courts for "the justice of the peace and police judge *within such cities.* Provided, this act shall not be construed to substitute municipal courts for justices of the peace *outside* said cities in said justice of the peace district." In the act under question "such cities" is stricken out, and "such justice of the peace districts" inserted. The balance of the clauses above quoted is omitted. The above amendment proposes a substantial change from the original act limiting the municipal courts to the cities where created, a change which is not made effective in the structure of the court organization as a city court heretofore quoted.

It is not here presented, but as written in the act in question, section 32-217 provides for the substitution of the municipal court, not only for justices of the peace, but also for the "police judge within such justice of the peace dis-

tricts." The query comes, did the legislature thereby abolish the police courts of the villages of Lancaster county and require those municipalities to look to the municipal court of Lincoln to perform the duties now performed by the police judge of their municipality?

To sections 32-216, 15-110, 16-105, 32-215, Comp. St. 1929, is the added provision that in all justice of the peace districts wherein municipal courts shall have been substituted by law for justices of the peace within such districts, that part of the section relating to justices of the peace shall not apply.

To sections 21-1805 and 21-1807, Comp. St. 1929, is added the provision that, "in justice of the peace districts wherein municipal courts shall have been substituted by law for justices of the peace within such districts, the municipal court shall be deemed the successor in office of all justices of the peace within such districts for all purposes."

From a study of the entire act under question, it appears clear that (1) the proposed substitution of the municipal court for the justice of the peace courts is contained in the amendment to section 32-217 in the language that "municipal courts as heretofore or hereafter established are hereby substituted by law for justices of the peace and police judge;" (2) that the only material change in the municipal court code is the provision that the judge is to be elected by all the electors of the county; (3) that, within the meaning of the constitutional provision quoted, the municipal court of the city of Lincoln, limited as it is to a city tribunal in its creation, structure, purpose and functions, in all respects save territorial jurisdiction and the right of the electors of the county to vote for its judge, is not such a court "within such district" as may be substituted for justices of the peace in precincts in Lancaster county without the city of Lincoln; (4) that, if the act is valid, the justice of the peace courts heretofore existing for the service of the people of Lancaster county are abolished; (5) that no additional court facilities are created for those abolished; (6) that, instead of saying that municipal courts were substituted by law

for justices of the peace, if the legislature had said that in counties such as Lancaster, containing cities with municipal courts, such as Lincoln, justice of the peace courts were abolished, the act would have had the same effect, for the obvious purpose and the result of the act is to abolish justice of the peace courts in Lancaster county. The use of constitutional language does not validate an act where the purpose and effect is not within a constitutional power. We look beyond the language used to the thing desired, and, if valid, accomplished. The use in the act of the words from the Constitution, "substituted by law," does not bring the act within the constitutional power when the purpose and effect of the act is simply to abolish justice of the peace courts. The legislature does not possess that power.

The necessary conclusion is that the entire act, having but the one purpose and the one effect, is beyond the constitutional power of the legislature and therefore void.

Respondent urges that *State v. Kubat, supra,* is definite authority for the substitution of an existing municipal court for justices of the peace, and for his position that the act here in question is a substitution and not an abolishment of the justices of the peace.

There are vital distinctions in the two situations. By the provisions of Laws of Nebraska 1915, ch. 249 (now Comp. St. 1929, sec. 5-106) justice of the peace district No. 15 consisted of the territory within the county of Douglas, *exclusive* of the cities of Omaha and South Omaha, and district No. 16 consisted of the territory within the cities of Omaha and South Omaha. The relator was a justice of the peace within district No. 16 (being the city district). This court there recognized that the legislature had "in view the distinction between the administration of justice in a metropolitan city and in outside districts;" that the legislature, after creating one justice of the peace district within, and one without, the city, substituted for the justice of the peace court *within the city* a *city* court whose territorial jurisdiction was coextensive with the city and with the justice of the peace district, for which it was substituted.

There the territorial jurisdiction of the city, the court, and the justice of the peace district was the same. This court there said: "By substituting the municipal court for the justice of the peace court *in Omaha*, the legislature was merely carrying out the purpose of the constitutional amendments by adopting a scheme of local government *for the city of Omaha*, whereby the ordinances of the city and laws of the state might be enforced through one court, thereby abolishing the offices of justice of the peace and public magistrate within the city * * *."

Here the attempt is to substitute a court created within a city for courts not within, but without, the city. The situations are not the same, and the *Kubat* case is not controlling in the case at bar.

WRIT ALLOWED.