STATE OF NEBRASKA et al., Plaintiffs,

v.

Robert FINCH, United States Secretary
of Health, Education, and Welfare,
et al., Defendants.

STATE OF NEBRASKA et al., Plaintiffs,

v.

Elliot L. RICHARDSON, Secretary of
Health, Education and Welfare,
et al., Defendants.

Civ. Nos. 1468 L, 1596 L.

United States District Court,
D. Nebraska.

Feb. 29, 1972.

Calvin Robinson, Asst. Atty. Gen., for plaintiffs.

Randall Rinquest, Asst. U. S. Atty., Arthur Abraham, Deputy Asst. Gen. Counsel, Dept. of HEW., and Ed Yourman, Asst. Gen. Counsel, Dept. of HEW., of counsel, for defendants.

MEMORANDUM OF DECISION

URBOM, Chief Judge.

The State of Nebraska has sought, pursuant to 42 U.S.C.A. § 418(t) (1), judicial review of a number of deficiency assessments levied against the State of Nebraska by the Secretary of Health, Education and Welfare for contributions due from the state under an agreement between the state and the Secretary which was effective January 1, 1951. The contract, authorized by 42 U.S.C.A. § 418(a) (1), brought under the terms of the Social Security Act employees and public officials of the State of Nebraska. During the contract period the State of Nebraska did not make contributions for wages earned by justices of the peace, city constables, and registrars of vital statistics. On December 3, 1964, the Secretary of Health, Education and Welfare notified the State of Nebraska that it was being assessed for contributions due under the agreement for wages earned by Clayton R. Ward, a justice of the peace, and Lewis W. Ross, a constable in the City of Lincoln. The deficiency due for Ross totaled $190.40; for Ward, $165.88. Through four letters dated April 15, 1965, J. L. Fay notified the State of Nebraska that further deficiencies were being assessed for contributions due on the salaries for all constable positions in the City of Lincoln, the City of Omaha, and throughout the State of Nebraska; the fourth letter assessed a deficiency for contributions due on salaries earned by all justices of the peace in the State of Nebraska during the period January 1, 1951, through September 13, 1960. The State of Nebraska sought review by the Secretary for deficiencies assessed on December 3, 1964; no review was sought of the deficiencies assessed on April 15, 1965. Because review by the Secretary is a jurisdictional requirement for review by this court, only those deficiencies assessed on December 3, 1964, are properly subject to review by this court under the terms of 42 U.S.C.A. § 418(t) (1). These assessments are the subject of State v. Finch, Civ. 1468 L.

The subject matter of State v. Richardson, Civ. 1596 L, consolidated with State v. Finch, is deficiencies reviewed by the Secretary: (1) on April 13, 1965, the State of Nebraska was notified that a deficiency was being assessed in the amount of $129.11 for contributions due on salaries earned by William R. Egenberger, a registrar of vital statistics in Dawson County, Nebraska, and covered fees paid Egenberger for his services through September 13, 1960; (2) on April 15, 1966, an additional deficiency was assessed for contributions due on remuneration received for services by other registrars of vital statistics in the State of Nebraska during the year 1962; and (3) a letter dated April 17, 1967, assessed deficiencies for contributions due on salaries earned by registrars of vital statistics in the State of Nebraska during the calendar year 1963. The Secretary concluded that the deficiencies were correctly assessed. Because the state has complied fully with the requirements of 42 U.S.C.A. § 418(t) (1), these assessments reviewed by the Secretary are properly subject to review by this court.

Defendants' exhibit 1, a copy of the agreement between the State of Nebraska and the Federal Security Administrator, extends the benefits conferred by Title II of the Social Security Act to services performed by individuals as employees of the State of Nebraska. The contract contains the following pertinent provisions:

"1. DEFINITIONS. For the purposes of this agreement the parties adopt the definition of terms as set forth in Section 218 of the Social Security Act; and, the term 'employee' shall mean an employee as defined in Section 210(k) of said act and *shall include an officer of the state or of a political subdivision thereof*. (Emphasis added)

"2. SERVICES COVERED. This agreement includes all services performed by individuals as employees of the state and as employees of those

political subdivisions listed in the appendix attached hereto, . . . it being the understanding of the parties that it is the intention of the State of Nebraska to provide coverage for its employees and for the employees of those political subdivisions which join with the state, on as broad a basis as is permitted under the Social Security Act."

The state excluded only those employees who would be covered by Social Security in the absence of the agreement, employees already covered by a retirement system, and those services which are specifically excluded under the Social Security Act. It was available to the state, if it so chose, to exclude employees whose remuneration was on a fee basis. Tit. 42 U.S.C. § 418(c) (3) (A) (iii) provides that:

"Such agreement shall, if the State requests it, exclude [in the case of any coverage group] any one or more of the following: . . . positions the compensation for which is on a fee basis."

The state did not choose to avail itself of this exclusion. By agreement approved April 6, 1962, the original contract was modified to exclude the services of individuals as justices of the peace and constables, the compensation for which is on a fee basis, from coverage groups included under the original agreement. This modification did not include registrars of vital statistics; however, the Secretary assessed deficiencies for William Egenberger only up to the date of September 13, 1960, the effective date of the modification to the original agreement.

Because in its original agreement with the Secretary the state chose to cover the broadest category of employees who could be covered within the terms of 42 U.S.C.A. § 418, it is apparent that if the three positions at issue in these two cases are, under Nebraska law, either employees or officers of the State of Nebraska, they are covered by the agreement of January 1, 1951, and the deficiency assessments must be upheld.

## JUSTICES OF THE PEACE

■ Clayton R. Ward served as justice of the peace in Platte County, Nebraska, from early 1953 until approximately March 31, 1955. During that period he earned $4,468.00. This amount was not paid as wages, but was the total of all fees collected by him in his capacity as justice of the peace. In reviewing the deficiencies assessed against the State of Nebraska for contributions due on Mr. Ward's earnings during this period, the Secretary found that justices of the peace are public officers under Nebraska law. A justice of the peace is a constitutional officer in Nebraska. The office is created by Article V, Section 1, of the State Constitution. See, State ex rel. Woolsey v. Morgan, 138 Neb. 635, 294 N.W. 436 (1950). It is the position of the State of Nebraska that because Article V, Section 18, of the Constitution of the State of Nebraska provides that justices of the peace be elected by district, the justice of the peace is an officer of the district within which he is elected, rather than an officer of the state. The boundaries of justice of the peace districts, although usually coterminous with county lines, are not uniformly so. However, I am not persuaded that merely because a justice of the peace is elected from within a district he is necessarily an officer of that district. It is apparent that the State of Nebraska exercises a considerable degree of control over the office of justice of the peace. Article V, Section 18, of the Nebraska Constitution grants to the state the power to create justice of the peace districts and to substitute other courts for the justice of the peace courts. State ex rel. Bunce v. Kubat, 110 Neb. 362, 193 N.W. 754 (1923). This control extends to determining the jurisdiction of justice of the peace courts. Bunce v. Kubat, supra. In addition, several statutes of the State of Nebraska regulate practice in the courts of justices of the peace. See, Conkling v. DeLany, 167 Neb. 4, 91 N.W.2d 250 (1958). It is the duty of the justice of the peace to administer the laws of the

State of Nebraska. Their practice is to be uniform throughout the state, and no significant difference in their practice is predicated on the fact that each is elected from a separate justice of the peace district. Bunce v. Kubat, supra.

The fact that a justice of the peace is elected from the district which may not coincide with county lines does not necessarily make a justice of the peace an officer of that district. A justice of the peace is not unique in the fact that he is elected by district. For example, a representative to the Congress of the United States is elected by district in Nebraska and that district may not coincide with any other boundary in the state. It is, however, clear that a representative to the Congress of the United States is an officer of the United States, not an officer of the district in which he was elected.

The section of the Constitution of the State of Nebraska which creates the office of justice of the peace also provides for the creation of all other courts in Nebraska. There is nothing to distinguish the office of justice of the peace from other judicial offices created by Article V, Section 1, except that the jurisdiction of the justice of the peace court is specifically set forth in Article V, Section 18. Although the state has the power to substitute other courts for the justice of the peace court, the court so created must retain the same jurisdiction as did the justice of the peace court which is abolished by the substitution. State ex rel. Woolsey v. Morgan, 138 Neb. 635, 294 N.W. 436 (1940). It is then, the State of Nebraska which has constitutionally created the office of justice of the peace, determines the jurisdiction of the justice of the peace courts, and regulates the substitution of other courts for that of the justice of the peace. Further, the justice of the peace districts have been created by state statute, the oath of office is prescribed by statute, the execution of a bond is prescribed by state statute, and, in several cases, the state or a political subdivision thereof provides office space

to a justice of the peace. In view of the significant amount of control exercised over the office of justice of the peace by the State of Nebraska, I conclude that the office of justice of the peace is a state office and the person who fills that office is an officer of the State of Nebraska. Because the January 1, 1951, agreement specifically includes public officers within its terms, I conclude that the office of justice of the peace is within the terms of the agreement and the deficiency assessment by the Secretary was proper in all respects.

## REGISTRARS OF VITAL STATISTICS

As noted earlier, deficiency assessments were entered by the Secretary for contributions due from the state on salaries earned by local registrars of vital statistics. In Nebraska local registrars of vital statistics are appointed by the state registrar of vital statistics, as authorized by § 71–602, R.R.S.Neb.1943. The duties of local registrars are set out in §§ 71–604 to 71–608, R.R.S.Neb.1943. Section 71–602 grants to the Department of Health the power to appoint municipal or county clerks as local registrars. Local registrars hold office during the pleasure of the Department of Health. It is the duty of local registrars to accept for filing all birth and death certificates. By statute they must forward to the Department of Health all certificates filed with them during the preceding month. The Department of Health supplies all necessary blanks, forms and instructions to the local registrars. The registrar is entitled to a fee of 50¢ for each certificate or report filed by him, with the fee to be paid by the county for which the certificate or report is made. Plaintiffs' exhibit B, the deposition of Freda Theis, the Director of the Bureau of Vital Statistics of the State of Nebraska, is instructive as to the manner in which the duties of local registrars are supervised by the State of Nebraska. As earlier noted, the local registrar is appointed by the director of the Department of Health.

In most cases either the county clerk or municipal clerk is appointed. The qualifications of the registrar are set by statute. The appointment is made at the discretion of the director and an individual appointed may be removed from that position by the director. Although the statute directs that all certificates filed by the local registrar shall be forwarded to the director by the 5th of each month, in practice they are generally forwarded more frequently. On a quarterly basis the bureau of vital statistics certifies to the county the number of certificates filed by the local registrar of vital statistics. The county on the basis of this certification pays to the registrar the sum of 50¢ for each certificate filed. To the knowledge of the director no payments were ever made directly from the office of the director of the bureau of vital statistics. Local registrars call on the director of the bureau of vital statistics when they have questions regarding the filing of certificates and the director occasionally does call on registrars in the exercise of her supervisory capacity. In 1966 the bureau of vital statistics issued a manual entitled, "Manual of Instructions for County Registrars." This manual is sent to each of the local registrars. The instruction booklet is intended for the guidance of local registrars and they are expected to comply with the instructions contained in the booklet. For the reasons which follow, I conclude that local registrars of vital statistics are employees of the State of Nebraska and are therefore subject to the agreement of January 1, 1951, and are not excluded from coverage by the modification to the agreement which became effective on September 13, 1960.

In arriving at my determination that a local registrar of vital statistics is an employee of the State of Nebraska, I find the following language of Gardner v. Kothe, 172 Neb. 364, 109 N.W.2d 405 (1961), to be instructive:

"The primary test in determining whether the relationship of employer-employee exists is whether the alleged employer has the right of control and supervision over the work of the alleged employee and the right to direct the manner in which the work is to be done as well as the result which is to be accomplished. . . . 'The test usually invoked in this state is whether the alleged employer has the control of the workman and the details, mode and manner of doing the work. . . . Generally most courts agree that the main test is the right of control, and that right, in the actual exercise of that control, governs. . . . Other factors are looked to only to aid in determining whether such relationship existed in a given case.' "

172 Neb. at 366, 109 N.W.2d at 408.

The State of Nebraska contends that the registrar of vital statistics is an independent contractor under Nebraska law. This contention, I think, is negatived by the following language from *Gardner*:

"An independent contractor, generally, is one who contracts to do a piece of work according to his own methods and is not subject to the control of the other contracting party except as to the result of the work."

172 Neb. at 366, 109 N.W.2d at 408.

Although some elements of a contractual relationship may exist which would indicate that the local registrar of vital statistics is indeed an independent contractor, it would also appear that the State of Nebraska, through the bureau of vital statistics, exercises a significant degree of control over the manner in which the local registrar of vital statistics performs his functions. Specifically, the director of the bureau of vital statistics issues a manual which governs the manner in which the functions of the local registrar of vital statistics are performed; a local registrar is subject to removal from his position by the director of the Department of Health; the registrar is subject to supervision of the director, and such supervision is regularly exercised; and all forms and blanks to be used by the registrar are

supplied to him by the State of Nebraska. Again turning to the language of Gardner v. Kothe, the court there said in answer to a contention that because the plaintiff was paid on a piecework basis he was not an employee:

"The payment of wages on a piece-rate basis is not inconsistent with the status of an employee. Riggins v. Lincoln Tent & Awning Co., 143 Neb. 893, 11 N.W.2d 810. The fact that Noble did not deduct withholding taxes or social security from the amounts paid to plaintiff is evidence that tends to negative a finding that the plaintiff was an employee but it is not conclusive.

"The fact that the plaintiff received the same rate as Noble did under the contract with the defendant is explained, at least in part, by the fact that it was the going rate for the work the plaintiff performed. . . .

"Upon a review of the evidence de novo, we hold that the evidence establishes that the plaintiff was an employee of George L. Noble at the time the accident happened."

172 Neb. at 368, 109 N.W.2d at 408.

Because each of the factors relied upon by the Supreme Court of Nebraska in finding that Gardner was an employee exists in the present case with regard to the relationship between local registrars of vital statistics and the director of the bureau of vital statistics, I hold that local registrars of vital statistics are employees of the State of Nebraska and that the deficiencies assessed respectively on April 13, 1965, April 15, 1966, and April 17, 1967, were proper and the Secretary must be affirmed.

### CONSTABLES

At the time that the State of Nebraska was notified that deficiencies had been assessed with respect to justices of the peace, it was also informed that deficiencies had been assessed with respect to constables in the City of Lincoln, the City of Omaha, and all other constables in the State of Nebraska. A notice dated December 3, 1964, assessed a deficiency for contributions due on sums earned by Lewis W. Ross, a constable for the City of Lincoln, Nebraska. A deficiency of $190.49, representing contributions due on earnings of $3,635.34, was assessed by that letter and subsequently upheld on review by the Secretary. I conclude that, as in the case of justices of the peace, Lewis W. Ross is an officer of the State of Nebraska.

Constables in Nebraska may be either elected or appointed, depending upon the size of the jurisdiction in which they serve. The primary duty of a constable is to serve the court which has appointed him, or the courts of the jurisdiction in which he is elected. Constables may serve process and may execute writs in criminal cases. Constables are not paid a salary but do receive fees for their services. The fees are paid directly by those who request the services of the constable; if the service is rendered to the court, the fee is paid by that court. The authority of the constable is derived from statute. In the case of Ross, he was appointed by and served at the discretion of Municipal Judge Richard O. Johnson. Ross' primary duties consisted of serving papers for the court, and from time to time he served as bailiff. He was paid a small salary for his services as bailiff; his services as constable were paid only by fees earned in an amount fixed by state statute. It would appear that the services of Ross were not restricted to Judge Johnson; he apparently served each of the other two municipal judges, both as constable and as bailiff. Plaintiffs' Exhibit E, the deposition of Judge Johnson, indicates clearly that Ross was subject to the supervision of Judge Johnson in the manner in which he performed his duties as constable. It would appear from the statutes that the office of constable is similar to that of sheriff. Constables, like sheriffs, are ministerial officers in justices' courts. In view of the fact that the office of constable is created by statute, and the conduct of constables in

**534**

fulfilling the duties of their office is closely regulated by statute, I believe the constable to be an officer of the State of Nebraska. In view of that conclusion it is clear that, like a justice of the peace, a constable is covered by the terms of the January 1, 1951, agreement and that the deficiency assessments of the Secretary were proper and should be upheld.

Those deficiency assessments which were presented to the Secretary for review and are therefore properly before this court were proper in all respects and should be upheld.

An appropriate order will be entered this day.