ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

May 15, 2008

Ms. Ann S. Fuelberg, Executive Director
Employees Retirement System of Texas
Post Office Box 13207
Austin, Texas 78711-3207

Opinion No. GA-0629

Re: Whether an open-enrollment charter school is a governmental entity, and whether the state may enter into an agreement with the Social Security Administration on the school's behalf (RQ-0652-GA)

Dear Ms. Fuelberg:

You ask several questions concerning open-enrollment charter schools in general and the John H. Wood, Jr. Charter School ("JHWCS") in particular.[1] Specifically, you ask:

> (1) Is an open enrollment charter school created under Subchapter D of Chapter 12 of the Texas Education Code, like the John H. Wood[], Jr. Charter School, considered to be an eligible entity under Chapter 606 of the Texas Government Code for the state to enter into agreements with the Social Security Administration to obtain social security coverage for the entity's employees?
>
> (2) Is an open enrollment charter school created under Subchapter D of Chapter 12 of the Texas Education Code, like the John H. Wood[], Jr. Charter School, considered under Texas law to be a governmental entity (i.e., political subdivisions or other instrumentality of the state of Texas or of another political subdivision)?
>
> (3) For each of the above questions that are answered affirmatively, what is the effective date of John H. Wood[] Jr. Charter School's attaining that status?

Request Letter, *supra* note 1, at 6. To aid in our consideration of your request, you provide us with detailed legal and factual information concerning Social Security coverage of state and local

---

[1]*See* Letter from Ann S. Fuelberg, Executive Director, Employees Retirement System of Texas, to Honorable Greg Abbott, Attorney General of Texas, at 1, 6 (Nov. 29, 2007) (on file with the Opinion Committee, *also available at* http://www.texasattorneygeneral.gov) [hereinafter Request Letter].

government employees, open-enrollment charter schools, the government pension offset, and the situation at the JHWCS. *See* Request Letter, *supra* note 1, at 1–6 (and attached exhibits 1–14). For context, we set forth some of that same information here.

## I.      Background

### A.      Social Security Coverage and State and Local Government Employees

State and local government employees were originally excluded from the Social Security system of taxation and insurance benefits out of concern that state and local governments could not be constitutionally taxed for the employer's share of Social Security taxes.[2] *See Pub. Employees Ret. Bd. vs. Shalala*, 153 F.3d 1160, 1161 (10th Cir. 1998) (describing origin of authorization of state and local government employee's inclusion in Social Security system); *accord Williams v. Bastrop*, 475 So. 2d 118, 120–21 (La. Ct. App. 2 Cir. 1985, writ denied); 42 U.S.C.A. § 410(a)(7) (West Supp. 2007) (exempting "[s]ervice performed in the employ of a State, or any political subdivision thereof, or any instrumentality of any one or more of the foregoing" from definition of employment under Old-Age, Survivors, Disability Insurance ("OASDI") benefits, or Social Security, program). The 1950 amendments to the Social Security Act ("SSA") amended section 218 and authorized states to enter into voluntary agreements ("Section 218 Agreements") with the Social Security Administration to provide Social Security insurance benefit coverage to state and local government employees. *See* Social Security Act Amendments of 1950, Pub. L. No. 81-734, § 218 , 64 Stat. 477. Section 218 is codified in section 418 of Title 42, United States Code. *See* 42 U.S.C.A. § 418(a)(1) (West Supp. 2007) (providing for voluntary agreements for Social Security coverage of state and local government employees); *see also* 20 C.F.R. § 404.1201(a) (2007).

A Section 218 Agreement covers positions, not individuals, by way of coverage groups. *See* 42 U.S.C.A. § 418(b)(5) (West Supp. 2007) (defining coverage groups), (c)(1) (providing that Section 218 Agreement is applicable to coverage groups designated by the state). "The State decides, within the limits of Federal and State law, which groups of employees to cover under its agreement." ONLINE SOCIAL SECURITY HANDBOOK, § 1003.1; *see* 42 U.S.C.A. § 418(c)(1) (West Supp. 2007) (authorizing state to designate coverage groups to be included in agreement). Section 218 authorizes absolute coverage groups and retirement system coverage groups. *See* 42 U.S.C.A. § 418(c)(1)–(2) (West Supp. 2007) (absolute coverage group), (d)(3) (retirement system coverage group). A "retirement system coverage group" consists of employees whose positions are covered under a public retirement system, and such groups may be part of a Section 218 Agreement only after a referendum is held. *Id.* § 418(d)(3). Where a majority of the eligible members vote in favor of

---

[2]"Social Security" consists of three major benefit programs. *See Ellender v. Schweiker*, 575 F. Supp. 590, 592 (D.C.N.Y. 1983) (describing Social Security program). Those programs provide benefits for: retirement, survivors, and disability. *See id.* The Medicare Program is a federally funded system of health insurance for the aged and disabled. *See* 42 U.S.C.A. §§ 1395–1395hhh (West 2003 & Supp. 2007). Social Security benefits and Medicare are both funded through taxes collected by the federal government under the Federal Insurance Contributions Act ("FICA"). *See* 26 U.S.C.A. §§ 3101(a) (West Supp. 2007) (relating to OASDI tax rate for employees), 3101(b) (relating to Hospital Insurance "HI" tax rate for employers), 3121(b)(7) (relating to employment taxes of employees of states and political subdivisions).

coverage, all current and future employees in positions under that retirement system are covered. *See id.* And under 42 U.S.C.A. § 418(d)(6)(C), Texas is specified as a state authorized to divide its retirement system into parts reflecting employees who desire coverage under a Section 218 Agreement and employees who do not desire coverage. *See id.* § 418(d)(6)(C).

Once the state's agreement is in place, the state then enters into voluntary agreements with its political subdivisions to extend Social Security coverage to employees of the political subdivision. *See* Request Letter, *supra* note 1 (attached exhibit 3: NATIONAL CONFERENCE OF STATE SOCIAL SECURITY ADMINISTRATORS HANDBOOK FOR THE STATE SOCIAL SECURITY ADMINISTRATOR (Dec. 2000) at 4; TEX. GOV'T CODE ANN. § 606.022(a) (Vernon 2004) (authorizing state retirement system to enter into agreements with political subdivisions to obtain Social Security coverage for the employees of the political subdivisions). Texas entered into its Section 218 Agreement in 1951, and it has been modified subsequently many times. *See U. S. ex rel. Fried v. Hudson Indep. Sch. Dist.*, 2007 WL 3217528, at *1 n.2 (E.D. Tex. Oct. 26, 2007).

## B.    Government Pension Offset

The Government Pension Offset ("GPO") affects individuals who worked as federal, state, or local government employees in a job covered by its own pension plan but not covered by Social Security. The GPO reduces that individual's Social Security spouse or surviving spouse benefit[3] by an amount equal to two-thirds of the individual's own public pension.[4] *See* 42 U.S.C.A. § 402(k)(5)(A) (West Supp. 2007); 20 C.F.R.§ 404.408a(a), (c)–(d) (2007). Before changes in 2004 to the GPO, an individual was exempted from the GPO if the individual's last day of government employment was in a job covered by both Social Security and the government pension.[5] *See* 42 U.S.C. § 402(b)(4)(A), (c)(2)(A), (e)(7)(A), (f)(2)(A) (2000).

---

[3]Social Security spouse and surviving spouse benefits are normally available to any person whose retired or deceased spouse worked at a job covered by Social Security. *See* 42 U.S.C.A. §§ 402(b) (West Supp. 2007) (wife's insurance benefits), 402(c) (husband's insurance benefits), 402(e)(widow's insurance benefits), 402(f)(widower's insurance benefits). Under the dual-entitlement rule, an individual with his or her own earnings record under Social Security and entitled to benefits as a worker would not be able to qualify for full benefits as both a worker and a spouse. *See* 42 U.S.C.A. §§ 402(b)(2) (reducing wife's insurance benefit by fifty percent), 402(c)(2) (reducing husband's insurance benefits by fifty percent).

[4]To illustrate, assume the following: Jane, a widowed, retired educator, receives a public pension of $600 a month. Her job in the public school system was not covered by Social Security. Her deceased husband, however, earned Social Security benefits from his job in the private sector. An amount equal to two-thirds of Jane's public pension, or $400, will be cut from her Social Security survivor's benefits. If Jane is eligible for $500 in survivor benefits from Social Security, the GPO would reduce her survivor's benefits to $100. The GPO does not reduce Jane's own public pension of $600.

[5]The Social Security Protection Act of 2004, enacted on March 2, 2004, modified the GPO exemption. *See* Social Security Protection Act of 2004, § 418, 42 U.S.C.A. 402(k) (West Supp. 2007). It essentially changed the "last day" requirement to a sixty-month requirement. *See id.* Under its effective date and transitional rule provisions, any state or local government worker whose last day of employment was before July 1, 2004, and whose last day of employment was covered by both Social Security and the state or local government pension, would avoid the operation of the GPO to the future claim for Social Security spouse's and surviving spouses's benefits. *See id.*

You inform us this exemption from the GPO is known as "the last day covered employment exemption." Request Letter, *supra* note 1, at 4. You explain that "[g]overnmental employees could work a long career in positions exempt from Social Security coverage and then transfer to or obtain a job at a governmental employer covered by Social Security, even if only for a day or so." *Id.* This last day of covered employment would exempt the individual from operation of the GPO.[6] *Id.*

## C.  John H. Wood, Jr. Charter School

In your request, you tell us that the JHWCS employed many teachers and other school district employees for this last day of covered employment prior to 2004. *Id.* at 5. You tell us that it appears these individuals were paid wages on their last day for a short period of final employment, wages from which FICA and Medicare taxes were withheld and remitted to the Social Security Administration. *Id.* You state that the JHWCS "is not currently covered by the State of Texas Section 218 Agreement with the [Social Security Administration]." *Id.* As that fact impacts the individuals who worked at the JHWCS for the short period of relevant time prior to retirement, it would mean that they are not exempted from the GPO.

You further tell us that if the JHWCS is a governmental entity, "it may be possible to hold a referendum[7] and submit a modification of [the agreement] so that [the school] would be so covered . . . [and if] FICA and Medicare taxes have been paid on behalf of the employees for [the relevant] time period, it may be possible to retroactively cover many" of the individuals who worked their "last day" at the school.[8] *Id.* You point out that "[i]f the [school] is not a governmental entity, FICA and Medicare taxes would have been due in the same manner that is required from any other non-governmental employer. But only if the . . . taxes are paid by a governmental entity pursuant to a Section 218 Agreement[,] is it useful for the 'last day covered employment exemption.'" *Id.* Only in the latter instance are the affected individuals exempted from the GPO. You describe the critical issue as "not a question of whether FICA and Medicare taxes have or should have been paid; rather it matters whether the . . . taxes were paid as a private entity or as a governmental entity." *Id.* Hence your questions about the status of the school.

We note that though you are particularly concerned about the JHWCS, your question potentially affects other open-enrollment charter schools. Thus, our opinion will primarily focus on the status of open-enrollment charter schools generally rather than on the specific status of the JHWCS.

---

[6]In a 2007 report, the Office of the Inspector General, Social Security Administration, examined this last day practice in several school districts in Texas. Based on its findings and a sampling of its data across the relevant population, the Inspector General estimated the exemption to cost the Social Security Trust Funds approximately $2.2 billion. *See* OFFICE OF THE INSPECTOR GENERAL, SOCIAL SECURITY ADMINISTRATION, GOVERNMENT PENSION OFFSET EXEMPTION FOR TEXAS SCHOOL DISTRICTS' EMPLOYEES, AUDIT REPORT (January 2007 A-09-06-26086) at pp. 2–3, 11, app. C-1–C-3.

[7]*See supra* at p. 2–3.

[8]You do not ask, and we do not opine, about the legality or effectiveness of a referendum or modification pertaining to retroactive coverage.

## II.    Legal Analysis

### A.    Political Subdivision

We first examine certain terms used in your questions. In your first question, you ask whether a charter school created under the Texas Education Code is "considered to be an *eligible entity*[9] under Chapter 606 of the Texas Government Code for the state to enter into agreements with the Social Security Administration to obtain social security coverage for the entity's employees[.]" *Id.* at 6 (emphasis and footnote added). Your second question inquires whether "an open enrollment charter school created under Subchapter D of Chapter 12 of the Texas Education Code, . . . [is] considered under Texas law to be a *governmental entity* . . . [.]"[10] *Id.* (emphasis added). We do not understand you to use "eligible entity" or "governmental entity" as terms of art. The substance of your first two questions is whether an open-enrollment charter school is an entity for which the state could seek to modify its Section 218 Agreement to extend Social Security coverage.[11]

Texas' Section 218 Agreement is authorized and governed by chapter 606, Government Code, and section 218 of the Social Security Act of 1950. *See* TEX. GOV'T CODE ANN. §§ 606.001–.101 (Vernon 2004); 42 U.S.C.A. § 418 (West Supp. 2007); 20 C.F.R. § 404.1200(a) (2007). Chapter 606, Government Code, does not use the term "eligible entity" or "governmental entity" but instead authorizes agreements with the states on behalf of "political subdivisions." *See* TEX. GOV'T CODE ANN. §§ 606.022(a) (Vernon 2004) (authorizing agreements with the "governing body of a political subdivision"); 606.001(3) (defining "political subdivision").

Similarly, section 218 of the SSA uses the term "political subdivision" to describe those entities that are eligible for coverage under a state's Section 218 Agreement. 42 U.S.C.A. § 418(a)(1) (West Supp. 2007) (authorizing agreement with state to cover "employees of such State or any political subdivision thereof"), (b)(2) (defining "political subdivision"); *see also* 20 C.F.R. §§ 404.1200(a) (2007) (authorizing agreement with state to provide Social Security coverage to "groups of employees of the State and its political subdivisions"), 404.1202(b) (defining "political subdivision"). Therefore whether an open-enrollment charter school may be characterized as an "eligible entity" or "governmental entity" does not resolve the issue. Rather, the dispositive question

---

[9]"Eligible entity" is a defined term in subchapter D, chapter 12, Education Code, pertaining to open-enrollment charter schools. *See* TEX. EDUC. CODE ANN. § 12.101(a) (Vernon 2006). It defines the type of entities that may be granted an open-enrollment school charter. *See id.* Because the JHWCS and any other chartered open-enrollment charter school is operating as a charter school, the State Board of Education presumably has previously determined the charter holder to be an "eligible entity" under subchapter D, chapter 12, Education Code.

[10]*See supra* note 9. The definition of "eligible entity" as an entity that may be granted a charter to operate an open-enrollment charter includes "a governmental entity." TEX. EDUC. CODE ANN. § 12.101(a)(4) (Vernon 2006).

[11]*See* Request Letter, *supra* note 1, at 5 ("[I]t may be possible to hold a referendum and submit a modification of the state of Texas Section 218 Agreement to the SSA so that the JWH Charter School would be so covered."); *id.* (distinguishing between taxes paid by the school as a private or government entity for purposes of inclusion in the state's Section 218 Agreement).

is whether an open-enrollment charter school such as the JHWCS is a "political subdivision" under chapter 606 and section 218.[12] Thus, we address this inquiry and your first two questions together.

Chapter 606 defines "political subdivision" to include

> an instrumentality of the state, of another political subdivision,[13] or of the state and another political subdivision;
>
> > (i) that is a juristic entity that is legally separate and distinct from the state or political subdivision; and
> >
> > (ii) whose employees are not employees of the state or political subdivision.

TEX. GOV'T CODE ANN. § 606.001(3)(C) (Vernon 2004) (footnote added). *See also* 42 U.S.C.A. § 418(b)(2) (West Supp. 2007) (defining "political subdivision" to include "an instrumentality of . . . a State"). Chapter 606's definition of "political subdivision" is unique[14] in Texas statutes and it serves the limited purpose of delineating entities eligible for inclusion in Texas' Section 218 Agreement. Though unique in Texas statutes, it comports with the federal definition of "political subdivision." *See* 42 U.S.C.A. § 418(b)(2) (West Supp. 2007) (defining "political subdivision" to mean "an instrumentality of (A) a State, (B) one or more political subdivisions of a State, or (C) a State and one or more of its political subdivisions").

---

[12]It appears the Social Security Administration agrees that the critical question involves the status of the school as a political subdivision. *See* Request Letter, *supra* note 1 (attached Exhibit 9: Nov. 28, 2006 Letter from the Social Security Administration Dallas Regional Office to Kenneth E. Messick, Superintendent, Educational Resource Ctr, Inc. d/b/a John H. Wood, Jr. Charter School stating that "[f]irst, the State must determine, under Texas law, that JWCS is a political subdivision or instrumentality of Texas"); *Id.* (attached Exhibit 13: Sept. 14, 2007 Letter from Social Security Administration to David W. Lacy, Assistant General Counsel, Employees Retirement System of Texas indicating that the "State must determine that JWCS is a political subdivision of the State of Texas as defined in section 218(b) of the Social Security Act").

[13]The term "political subdivision" is used in all relevant components of the definition of the term "political subdivision." *See* TEX. GOV'T CODE ANN. § 606.001(3)(C) (Vernon 2004). The initial reference in subsection (3)(C) is plainly to "*another* political subdivision." *Id.* (emphasis added). Because this initial reference leads into the two subparts, the continued use of the term "political subdivision" must refer to a "political subdivision" that is *other* than the entity actually being examined under the definition.

[14]*See* TEX. AGRIC. CODE ANN. § 150.011(1) (Vernon 2004) (defining "political subdivision"); *accord* TEX. CIV. PRAC. & REM. CODE ANN. § 15.0151(b) (Vernon 2002); TEX. ELEC. CODE ANN. § 1.005(13) (Vernon 2003); TEX. GOV'T CODE ANN. § 403.1041(5) (Vernon 2005); TEX. HEALTH & SAFETY CODE ANN. § 435.021(a)(1) (Vernon 2001); TEX. INS. CODE ANN. § 1215.001(a)(8) (Vernon 2007); TEX. LAB. CODE ANN. § 22.001(6) (Vernon 2006); TEX. LOC. GOV'T CODE ANN. § 172.003(3) (Vernon 2008); TEX. OCC. CODE ANN. § 2001.002(21) (Vernon 2004); TEX. PARKS & WILD. CODE ANN. § 24.051(10) (Vernon Supp. 2007); TEX. TRANSP. CODE ANN. 706.001(7) (Vernon Supp. 2007); TEX. WATER CODE ANN. § 15.001(5) (Vernon Supp. 2007).

The question whether an entity is a "political subdivision" for purposes of inclusion in a state's Section 218 Agreement is one of state law. *See Peterson v. Mathews*, 414 F. Supp. 1306, 1313 (D.C. Md. 1976) ("The question of whether Peterson is an officer of the State of Maryland or of a political subdivision of the State of Maryland leads to an examination of Maryland law."); *see also Attorney Registration & Disciplinary Comm'n v. Harris*, 595 F. Supp. 107, 112 (D.C. Ill. 1984); *State of Nebraska v. Finch*, 339 F. Supp. 528, 530 (D.Neb. 1972). Relevant here is an open-enrollment charter school's status as an "instrumentality of the *state*. . . that is a juristic entity that is legally separate and distinct from the *state* . . . and . . . whose employees are not employees of the *state* . . . ." TEX. GOV'T CODE ANN. § 606.001(3)(C) (Vernon 2004) (emphasis added); *see also supra* note 13. We consider each aspect in turn.

### 1.     Instrumentality of a State

Chapter 606 does not define "instrumentality of a state" and we find nothing elsewhere in Texas law that adequately informs about what constitutes an "instrumentality of a State" in the Social Security context. Outside of that context, a Texas court of appeals has stated that the ordinary meaning of a "state instrumentality is a branch of the state or a means through which a function of the state is accomplished."[15] *De Santiago v. W. Tex. Cmty. Supervision & Corrs. Dept.*, 203 S.W.3d 387, 394 (Tex. App.—El Paso 2006, no pet.) (citing BLACK'S LAW DICTIONARY 802 (7th ed. 1999)) (examining term "state instrumentality" under the Texas Commission on Human Rights Act "TCHRA").

While it cannot plainly be said that an open-enrollment charter school is a "branch of the state," we believe it is a "means through which a function of the state is accomplished." *De Santiago*, 203 S.W.3d at 394. The provision of public education is a function of the state. *See* TEX. CONST. art. VII, § 1; *see also Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 753 (Tex. 2005) (noting constitutional duty of Legislature to provide for public education); *Braun v. Trs. of Victoria Indep. Sch. Dist.*, 114 S.W.2d 947, 949–51 (Tex. Civ. App.—San Antonio 1938, writ ref'd) (holding that article VII, section 1, Texas Constitution, establishes the matter of public education as a governmental function). By statute, "[a]n open-enrollment charter school is part of the public education system" of Texas. *See* TEX. EDUC. CODE ANN. § 12.105 (Vernon 2006). An open-enrollment charter school is required to "provide instruction to students at one or more elementary or secondary grade levels as provided by the charter." *Id.* § 12.102(1). Its primary responsibility is to implement "the public school program authorized by the open-enrollment charter and [to ensure] the performance of the students enrolled in its charter schools in accordance with the Texas Education

---

[15]Other courts have determined, under the TCHRA, that an entity "created pursuant to Texas statutory authority, and whose purpose includes the performance of public and governmental functions is an instrumentality of the state." *Dallas/Fort Worth Int'l Airport Bd. v. Funderburk*, 188 S.W.3d 233, 237 (Tex. App.—Fort Worth 2006, pet. granted) (holding D/FW International Airport Board to be a state instrumentality subject to claims made under TCHRA) *opinion after remand* 2006 W.L. 3248031 (refusing to vacate); *see also Tarrant County Hosp. Dist. v. Henry*, 52 S.W.3d 434, 445–48 (Tex. App.—Fort Worth 2001, no pet.) (holding hospital district to be a state instrumentality under TCHRA), *Vela v. Waco Indep. Sch. Dist.*, 69 S.W.3d 695, 700 (Tex. App.—Waco 2002, pet. withdrawn) (holding school district—in claim made prior to amendment defining state agency—to be state instrumentality subject to claims made under TCHRA).

Code." 19 TEX. ADMIN. CODE § 100.1101(a) (2008). By providing public education as directed under chapter 12, Education Code, an open-enrollment charter school is a "means through which a function of the state is accomplished" and, therefore, an "instrumentality of the state" within chapter 606.[16] *De Santiago*, 203 S.W.3d at 394; TEX. GOV'T CODE ANN. § 606.001(3)(C) (Vernon 2004).

### 2.    A juristic entity that is legally separate and distinct from the state

Neither chapter 606 nor any other Texas statute or judicial opinion defines "juristic entity." *See generally* TEX. GOV'T CODE ANN. §§ 606.001–.101 (Vernon 2004). The common meaning of "juristic" is "of or relating to law." BLACK'S LAW DICTIONARY 860 (7th ed. 1999); TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). The dictionary entry for "juristic" equates the term to "artificial person." BLACK'S LAW DICTIONARY 860 (7th ed. 1999); *cf. Horne Motors v. Latimer*, 148 S.W.2d 1000, 1003 (Tex. Civ. App.—Dallas 1941, writ dism'd judgm't cor.) (defining "juristic person" as "having a legal entity, separate and apart from its officers and members"). An "artificial person" is an "entity, such as a corporation, created by law and given certain legal rights and duties of a human being." BLACK'S LAW DICTIONARY 1162 (7th ed. 1999); *cf. Horne Motors*, 148 S.W.2d at 1003 (defining corporation as "juristic person").

---

[16]We note that the Internal Revenue Service ("IRS") has developed a six-factor test to determine whether an entity is an "instrumentality of a state" under FICA, which is the authorization for the employment taxes that support and fund the OASDI benefits. *See* Revenue Ruling 57-128, 1957-1 C.B. 311; *see also supra* note 2. While a court might find the IRS's six-factor FICA test illuminating, the question whether an entity is a "political subdivision" under section 218 and chapter 606 is one of state law. *See Peterson*, 414 F. Supp. at 1313 ("The question of whether Peterson is an officer of the State of Maryland . . . leads to an examination of Maryland law."); *see also Harris*, 595 F. Supp. at 112; *Finch*, 339 F.Supp. at 530. Accordingly, it is the state's judicial definition on which we will base our opinion.

Moreover, the broad definition from the *De Santiago* opinion appears to encompass the substance of the following IRS factors, which are:

> (1)    whether it is used for a governmental purpose and performs a governmental function;
>
> (2)    whether performance of its function is on behalf of one or more states or political subdivisions;
>
> (3)    whether there are any private interests involved, or whether the states or political subdivisions involved have the powers or interests of an owner;
>
> (4)    whether control and supervision of the organization is vested in public authority or authorities;
>
> (5)    if express or implied statutory or other authority is necessary for the creation and/or use of such an instrumentality, and whether such authority exists;
>
> (6)    the degree of financial autonomy and the source of its operating expenses.

Rev. Rul. 57-128, 1957-1 C.B. 311.

A charter holder for an open-enrollment charter school is either a private or public institution of higher education, a 503(c)(3) tax exempt organization, or a governmental entity. *See* TEX. EDUC. CODE ANN. § 12.101(a) (Vernon 2006). All three of these types of "eligible entities" are entities created under and recognized by Texas law. *See id.* § 61.003 (Vernon Supp. 2007) (defining public and private institutions of higher education); TEX. BUS. ORG. CODE ANN. § 2.008 (Vernon 2007) (authorizing nonprofit corporations); TEX. GOV'T CODE ANN. § 572.056(c) (Vernon 2004) (defining "governmental entity" to mean "the state, a political subdivision of the state, or a governmental entity created under the Texas Constitution or a statute of this state"). And an open-enrollment charter school has all the legal rights and duties provided it under chapter 12. *See* TEX. EDUC. CODE ANN. §§ 12.101(b) (Vernon 2006) (authorizing the granting of a charter), 12.102(1) (imposing duty of educational instruction on open-enrollment charter schools), 12.104(a) (providing open-enrollment charter school with powers granted to schools). We therefore believe an open-enrollment charter school chartered under chapter 12, Education Code, is a juristic entity under the plain meaning of that phrase as used in chapter 606, Government Code.

In addition, an open-enrollment charter school is separate and distinct from the state. An open-enrollment charter school can operate only after receiving a charter from the Texas State Board of Education. *See id.* § 12.101(a). And the charter is a contract between the state and the school. *See id.* § 12.112. In order to be able to enter into a contract with the state, the school, through its charter holder, must be a separate and distinct entity. *See S. Kan. Ry. Co. of Tex. v. Logue*, 139 S.W. 11, 14 (Tex. Civ. App.—San Antonio 1911), *aff'd*, 167 S.W. 805 (Tex. 1914) ("It is axiomatic that it takes at least two parties to enter into a contract . . . .").

### 3.    Whose employees are not employees of the state

Chapter 12, Education Code, recognizes that employees of an open-enrollment charter school are employees of the charter school and not the state. Employees of an open-enrollment charter school are authorized in section 12.1057 to be covered under the Teacher Retirement System of Texas. *See* TEX. EDUC. CODE ANN. § 12.1057(a) (Vernon 2006). The employer contribution for the employees of the open-enrollment charter school is made by the school. *See id.* § 12.1057(b). Section 12.129 implicitly recognizes that a "person employed as a teacher by an open-enrollment charter school" is an employee of the charter school. *Id.* § 12.129. Additionally, an open-enrollment charter school must provide parents or guardians written notice of the qualifications of "each teacher employed by the school." *Id.* § 12.130. As employees of the open-enrollment charter school, the employees are not employees of the state.

Under the three aspects of section 606.001(3)(C), Government Code, an open-enrollment charter school is a "political subdivision" under state law for purposes of a Section 218 Agreement.

### B.    Effective Date

Having determined that an open-enrollment charter school is a political subdivision under chapter 606 and section 218, we turn to your final question. You inquire about the "effective date of John H. Wood[], Jr. Charter School's attaining that status[.]" Request Letter, *supra* note 1, at 6.

The eligible entity that makes application for an open-enrollment charter school charter may not operate the school until it receives a charter from the State Board of Education. *See* TEX. EDUC. CODE ANN. § 12.101 (Vernon 2006). A charter when granted "shall be in the form of a contract." *Id.* § 12.112. The charter contract is for a specified term, and the contract may be renewed, but the granting of a charter "does not create an entitlement to a renewal of a charter on the same terms as it was originally issued." *Id.* § 12.113(b). And the commissioner is authorized to revoke or deny renewal of the charter under certain circumstances. *See id.* § 12.115. If a charter is revoked or not renewed, the open-enrollment charter school "may not . . . continue to operate." *Id.* § 12.1161(a)(1).

Based on these provisions, we conclude that an open-enrollment charter school is a "political subdivision" under chapter 606 and section 218 as of the effective date of the contract granting the charter. In the event the charter is renewed at the end of the contract term, we believe the school's status continues. Any interruption in the school's operation, however, based on a revocation or denial of renewal of the charter, also interrupts the school's status as a "political subdivision."

**S U M M A R Y**

Chapter 606 of the Texas Government Code and section 218 of the Social Security Act authorize an agreement between a state and the Social Security Administration whereby Social Security coverage may be extended to employees of the state and its political subdivisions. Chapter 606 and section 218 define a political subdivision as an instrumentality of the state that is a juristic entity legally separate and distinct from the state and whose employees are not employees of the state. As determined by state law, an open-enrollment charter school is a political subdivision under chapter 606 and section 218. Accordingly, an open-enrollment charter school is an entity for which the state may enter into an agreement with the Social Security Administration.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee